IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| The Gun Range, LLC,<br>　　　　　　　　Appellant<br><br>　　　　　v.<br><br>City of Philadelphia, Philadelphia<br>Zoning Board of Adjustment,<br>Spring Garden Civic Association,<br>Patricia Freeland, Justino Navarro,<br>Lawrence Rust, Regina Young,<br>Bryan Miller, Heeding God's Call<br>to End Gun Violence and Susan A.<br>Murray | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | No. 1529 C.D. 2016<br><br>Argued: May 2, 2017 |


BEFORE:　　HONORABLE PATRICIA A. McCULLOUGH, Judge
　　　　　　　HONORABLE ANNE E. COVEY, Judge
　　　　　　　HONORABLE DAN PELLEGRINI, Senior Judge


***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH　　　　　　　　　　　　FILED: May 7, 2018


　　　　　The Gun Range, LLC (Appellant) appeals from the August 11, 2016 order of the Court of Common Pleas of Philadelphia County (trial court), which affirmed the October 6, 2015 decision of the Philadelphia Zoning Board of Adjustment (ZBA) and which denied Appellant's statutory appeal of the ZBA's refusal to permit a proposed gun shop on its property within a CMX-2 zoning district.[1]

---

　　　　　[1] A CMX-2 zoning district represents a small-scale neighborhood commercial and residential mixed use.

**Facts and Procedural History**

In 2012, Appellant began leasing space on the second floor of a building on the property at 542-44 Percy Street in the City of Philadelphia (City), which is classified as a CMX-2 commercial zoning district, to operate a shooting range. That property had been used as a shooting range since 1985, when the ZBA approved an application for a certificate for operation of a 2nd floor shooting range. (Reproduced Record (R.R.) at 207a-10a, 241a-72a; ZBA's Findings of Fact Nos. 9-12.)

On March 20, 2015, Appellant filed an application with the City's Department of Licenses and Inspections (L&I) for a zoning use registration permit, seeking approval of a change from "gun range" to "gun range & gun sales." The application confirmed that the Percy Street site is located in an area zoned CMX-2. L&I denied the proposed use on April 22, 2015, citing non-compliance with the Philadelphia Zoning Code (Zoning Code) Table 14-602-2 and section 603(13), and finding that, "The proposed use, gun shop, is prohibited in this zoning district and prohibited within 500 ft. of residential district." (R.R. at 32a-33a.) Additionally, a Regulated Use Inspection Report issued by L&I on April 2, 2015, indicated that Appellant was within 53 feet of residences on the 900 block of Green Street and within 85 feet of residences at 915 Spring Garden Street. (ZBA's Finding of Fact No. 3.)

On April 22, 2015, Appellant appealed the denial of the application to the ZBA, asking for a variance and arguing that "granting the requested variance will obviate an existing hardship and will not be contrary to the public interest." (R.R. at 34a.) Appellant also alleged, "[t]he requested variance represents the least modification of the [Zoning] Code to provide relief," and "[t]he granting of the variance will not increase congestion in the public streets nor in any way endanger public safety." (R.R. at 34a-35a.)

2

The ZBA held a hearing on August 12, 2015. At the outset of the hearing, Appellant's counsel informed the ZBA that Appellant was "amending" its reasons for the appeal and that it would not be pursuing a variance. (R.R. at 41a.) In lieu thereof, Appellant's counsel stated that Appellant was appealing on the basis that L&I's refusal of the proposed gun shop was in error and, as set forth in said counsel's Memorandum to the ZBA, that state law preempted the City's ability to regulate guns, that the Zoning Code's gun regulations are unconstitutional violations of the Second Amendment to the U.S. Constitution and article 1, section 21 of the Pennsylvania Constitution, and that the Zoning Code as it relates to guns is also unconstitutional as being *de facto* exclusionary. (R.R. at 40a-41a, 160a-71a.)

The ZBA allowed Appellant to amend its appeal because none of the other parties objected. (R.R. at 39a-45a.) The ZBA also accepted the Memorandum submitted by Appellant's counsel and afforded opposing counsel 30 days to submit a written response thereto, as well as permitting Appellant's counsel 15 days thereafter to supplement her initial submission. (R.R. at 109a-11a.)

Appellant offered two witnesses: Bindu Mathew, the L&I Plans Examiner who denied the application, and Yuri Zalzman, the principal for Appellant. Appellant's first witness, Ms. Mathew, testified:

> The application came in for a gun shop and the gun shop is an illegal use, and that is why I issued a refusal. Now, a part of that, when I reviewed the application, we checked the history on the appeal form from 1985 that clearly says they do not do the retail of gun sales in this location. . . . So that means that Permit is only for a shooting range and not for a gun shop. And you're asking for a gun shop as part of [Appellant's application in the present case], and that is a prohibitive [sic] use.

(R.R. at 89a-90a.)

3

Ms. Mathew also testified that there was a separate zoning classification for a "gun shop," which she stated was allowed in only one zoning district by right, I-3. The "gun shop" classification was not permitted at all in CMX-2 and was allowed only as a special exception in other zoning districts. Her testimony confirmed that the refusal was also based on the fact that the proposed gun shop was located within 500 feet of a residential district. (R.R. at 99a-100a.)

Appellant's next witness, Mr. Zalzman, testified that Appellant operated an "indoor gun range" that also sold ammunition, targets, and cleaning supplies, and rented guns for use at the shooting range only. (R.R. at 102a, 121a-22a.) He described the Appellant's neighborhood as:

> It's mostly commercial. There is a building adjoining me that is an industrial building. There is a construction company across the street. The original Reading Terminal, which is an artist colony now, is directly across the street. Behind there is a railroad trestle, barbed wire. Around the corner on Spring Garden there are multiple shops. There's a police continuing education [building] there at 10th and Spring Garden.

(R.R. at 103a.)

He testified that there were some residential units near Appellant's site, as well as a Buddhist temple and St. Paul's Baptist Church. (R.R. at 130a-37a.) Mr. Zalzman also testified that Appellant was "the only indoor shooting range in Philadelphia that does not have a gun retail [sales] aspect to it." (R.R. at 118a.) He testified further that he believed that the ZBA permitted the sale of guns at Appellant's site since 1985. (R.R. at 126a.)

Following Mr. Zalzman's testimony, Ed Panek testified on behalf of the Logan Square Neighborhood Association, which opposed Appellant's application. State Representative W. Curtis Thomas also testified as the legislator

4

in whose district Appellant's business is located, and he noted his opposition. Other neighbors, as well as a representative of the Buddhist temple and the Pastor of St. Paul's Baptist Church, also stood to oppose the application (without testifying). (R.R. at 139a-45a.)

Appellant also offered a map identifying those parts of the City in which a gun shop could open for business as of right, which are located in the I-3 zoning district, comprising approximately 3.74% of the total area of the City of Philadelphia. (R.R. at 282a-83a.) Further, as the ZBA noted, Appellant argued that "state law preempts Philadelphia's ability to regulate guns" and that "The [Zoning] Code as it relates to gun sales is unconstitutional." (ZBA's Finding of Fact No. 19.) More specifically, Appellant argued that the Pennsylvania Uniform Firearms Act of 1995 (Firearms Act)[2] preempted the City's Zoning Code and that the Zoning Code infringes on a person's right to keep and bear arms under the United States and Pennsylvania Constitutions.[3] *See* R.R. at 163a-68a.

On October 6, 2015, the ZBA voted to deny Appellant's appeal, concluding that "the retail sale of guns is not permitted at the property and that L&I acted correctly in issuing [Appellant] a refusal." (ZBA's Finding of Fact No. 8; Conclusion of Law No. 14.) Specifically, the ZBA found that the 1985 approval was for a "certificate" to allow the shooting range and that a "certificate" was the equivalent of a special exception. (ZBA's Finding of Fact No. 12; Conclusion of Law No. 11.) Further, the ZBA found that Appellant's present site is located within the CMX-2 zoning district, and that, as such, use as a gun shop is specifically

---

[2] 18 Pa.C.S. §§6101-6187.

[3] Appellant later reiterated these issues before the trial court. *See* R.R. at 521a-26a, 697a-776a.

prohibited under the current Zoning Code. Further, the ZBA found that "the proposed sales [of firearms] would represent an expansion of the use previously approved by the [ZBA] and that retail sales of guns did not fall into the same category as shooting range at the time the 1984 [sic] Certificate was granted." (ZBA's Finding of Fact No. 3; Conclusion of Law No. 2.)

Additionally, the ZBA found that the Zoning Code did not allow gun sales on the property because Appellant's site is within 500 feet of a residential district, citing the Zoning Code at section 14-601(6)(c)(.2). (ZBA's Conclusions of Law Nos. 3-4.) Finally, the ZBA ruled that it lacked jurisdiction to address any preemption or constitutional arguments. (ZBA's Conclusion of Law No. 15; Exhibit C to Appellant's brief at 7.)

Appellant filed a timely appeal of the ZBA's October 6, 2015 decision to the trial court on October 29, 2015. On December 3, 2015, and December 31, 2015, the following parties intervened in the matter to oppose the appeal: Spring Garden Civic Association, Patricia Freeland, Justino Navarro, Lawrence Rust, Regina Young, Bryan Miller, Heeding God's Call to End Gun Violence, and Susan A. Murray (collectively, Intervenors). (R.R. at 21a.) On April 5, 2016, Appellant filed a motion to quash, seeking to dismiss Intervenors from the appeal. (R.R. at 25a.) The trial court denied that motion on May 3, 2016. (R.R. at 27a.) On June 28, 2016, Mr. Zalzman filed his own petition to intervene, which was denied as untimely by the trial court's order of July 25, 2016. (R.R. at 29a.)

With respect to the appeal, the trial court allowed briefing and convened oral argument on June 29, 2016, but no additional evidence was presented. (R.R. at 493a-502a, 697a-777a.) By order of August 9, 2016, the trial court affirmed the ZBA's decision. Appellant filed an appeal to this Court on September 7, 2016. On

6

December 2, 2016, the trial court filed an opinion in support of its August 9, 2016 order. The trial court's opinion rejected Appellant's arguments, holding that the City's Zoning Code: (1) did not permit the addition of retail gun sales at Appellant's shooting range; (2) was not preempted by Pennsylvania law concerning firearms; and (3) was not unconstitutional as it pertained to sales of firearms. (Trial court op. at 4.)

With respect to the first argument, Appellant argued that its proposed gun sales were already a permissible use within the City's CMX-2 zoning district, contending that because the specific term "shooting range" was absent from the Zoning Code, and because ammunition was sold and guns were loaned to customers at the shooting range, the terms "shooting range" and "gun shop" must therefore "be read to be synonymous." (Trial court op. at 5.) The trial court rejected Appellant's argument, explaining that Table 14-602-2 of the Zoning Code "delineates the permissible and impermissible uses for property designated within a Commercial district. The Table clearly established that a gun shop was not permissible within a CMX-2 district . . . ." (Trial court op. at 5.)

Moreover, according to the trial court, Table 14-602-2 showed "that a gun shop is 'expressly prohibited' within *any type* of Commercial district in the City of Philadelphia and references Section 14-603(13), which designates a gun shop as a regulated use and renders it subject to specific separation requirements," including a ban on its location within 500 feet of any residential district. *Id.* Because Appellant was located within 53 feet of residences, Appellant's proposal failed. The trial court noted that "a variance would be required to operate a gun shop, unless the property's existing certificate would permit such use, which it did not." (Trial court op. at 5-6.)

7

Appellant's second argument was that state law concerning firearms preempts local zoning regulations. The trial court disagreed, stating that "this Court rejects any argument that state law pre-empts [sic] reasonable local zoning regulations even where, as here, constitutional rights are implicated in the regulations." (Trial court op. at 6.) The Zoning Code provisions challenged by Appellant "merely seek to regulate the *location* of gun sales and do not in any way seek to regulate or impinge upon the ownership, possession, or transfer of guns." (Trial court op. at 6) (emphasis in original). In a related vein, the trial court held that Appellant failed to demonstrate that the Zoning Code was "clearly arbitrary and unreasonable," or that the provisions of the Zoning Code had no "substantial relation to the public health, safety, morals or general welfare," because the proposed sale of firearms "*is less than 60 feet away from a concentrated residential district near downtown Philadelphia*, and, as such, the City has an important governmental objective in limiting retail gun sales in such district." (Trial court op. at 6-7) (emphasis in original). The trial court did not address Appellant's arguments regarding the constitutional concerns about the Zoning Code as it pertained to gun sales.

## Discussion

Appellant filed a timely appeal to this Court,[4] arguing that: (1) the ZBA capriciously disregarded evidence when determining that the requested use as a gun

---

[4] When the trial court does not take additional evidence, our scope of review is limited to determining whether the zoning board committed an abuse of discretion or an error of law. *Society Created to Reduce Urban Blight (SCRUB) v. Zoning Board of Adjustment of the City of Philadelphia*, 814 A.2d 847, 850 (Pa. Cmwlth. 2003). The zoning board abuses its discretion when it makes material findings of fact not supported by substantial evidence. *Id.* Substantial evidence is such relevant evidence as a reasonable mind might find adequate to support a conclusion.

8

shop was not permitted; (2) the ZBA's decision was erroneous because the City's Zoning Code attempts to regulate firearms in a manner preempted by state law; (3) the ZBA's decision was erroneous because the City's Zoning Code attempts to regulate firearms in a manner that is unconstitutional; and (4) the City's Zoning Code is unconstitutional because it is *de facto* exclusionary.

## Capricious Disregard of Evidence

Appellant first argues that the ZBA capriciously disregarded evidence of "the manner of classification of uses under the current Zoning Code." (Appellant's brief at 15.) The Zoning Code uses a system of land use categories and "use subcategories" that are broken down further to "specific use types." Zoning Code, §14-601. The Zoning Code classifies a "gun shop" under a use category ("Retail Sales"), a use subcategory ("Consumer Goods"), and a specific use ("Gun Shop"). Zoning Code, §14-601(6)(c)(.2).

According to Appellant, because there is no equivalent classification for "shooting ranges," the most appropriate classification in the current Zoning Code would be "gun shop" and that, accordingly, use as a "gun shop" is currently permitted at the site. (Appellant's brief at 21.) Specifically, Appellant takes a leap of logic and equates "shooting range" (the property's use since 1985) with "gun shop" (a use Appellant freely admits is not the business presently conducted on the property), rationalizing that: (1) the closest classification in the Zoning Code is "gun shop"; and (2) other shooting ranges in the City feature retail sales of firearms.

*Teazers, Inc. v. Zoning Board of Adjustment of the City of Philadelphia*, 682 A.2d 856, 858 n.3 (Pa. Cmwlth. 1996). Where a party asserts capricious disregard of evidence as a ground for appeal, this Court must address that concern. *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 812 A.2d 478, 487-88 (Pa. 2002).

9

In response, the City argues that the Zoning Code prohibits issuance of the use permit sought by Appellant. The certificate issued in 1985 allowed a shooting range in the same way that a special exception would be approved today, and there is nothing in that certificate, express or implied, that allows Appellant to ignore the Zoning Code's prohibition against gun shops in the CMX-2 zone. Zoning Code, §§14-602(2)(d) and 14-602(5). Further, the gun shop located at Appellant's site cannot be considered a pre-existing non-conforming use, because the only use pre-dating the inclusion of a "gun shop" class in the Zoning Code was the use as a shooting range. Permitting the retail sale of firearms would represent an improper expansion of the site's existing approved use as a shooting range. The City asserts that a shooting range is simply not the same as a gun shop under the Zoning Code, even if other shooting ranges in the City also have retail firearms sales.

The Zoning Code was revised in 2007 to include zoning regulation of "gun shops." When these amendments were passed, the only use at Appellant's site was that of a shooting range. Appellant cannot now assert a new, non-conforming use which did not exist at the time the applicable zoning ordinance was enacted. *Hanna v. Zoning Board of Adjustment of the City of Philadelphia*, 183 A.2d 539, 543-44 (Pa. 1962).

Appellant conflates definitions with exclusions and ignores the basic fact that gun shops, *i.e.*, the retail sales of firearms, are prohibited in the CMX-2 zone in which its shooting range is located. A shooting range and a gun shop are different uses of property. Gun shops are not banned in Philadelphia; rather, they are allowed as of right in the I-3 zone and allowed by special exception in the ICMX and I-2 zones.[5]

---

[5] An I-2 zone represents a medium industrial use. An I-3 zone represents a heavy industrial use. An ICMX zone represents a mixed industrial and commercial use.

Appellant offered no evidence to support its argument that the ZBA capriciously disregarded evidence of the manner of classification of uses under the current Zoning Code beyond equating the site's present use as a shooting range with its proposed use as a gun shop. As such, the trial court did not err in affirming the ZBA on this issue.

**Preemption**

Appellant next argues that because "the transfer of firearms is what occurs at a gun shop," the Zoning Code is preempted by the Firearms Act to the extent the Zoning Code seeks to regulate gun shops. (Appellant's brief at 22.) The Firearms Act reads in pertinent part:

> No county, municipality or township may in any manner regulate the lawful ownership, possession, transfer or transportation of firearms, ammunition or ammunition components when carried or transported for purposes not prohibited by the laws of this Commonwealth.

18 Pa.C.S. §6120(a).

Appellant cites *Ortiz v. Commonwealth of Pennsylvania*, 681 A.2d 152 (Pa. 1996), for the proposition that "[b]ecause the ownership of firearms is constitutionally protected, its regulation is a matter of statewide concern. . . . Thus, regulation of firearms is a matter of concern in all of Pennsylvania, not merely in Philadelphia and Pittsburgh, and the General Assembly, not city councils, is the proper forum for the imposition of such regulation." *Id.* at 156.

On the other hand, the City argues that the Firearms Act does not preempt its Zoning Code. While section 6120(a) of the Firearms Act preempts the "regulation" of firearms, Pennsylvania courts have held that such preemption of a local regulation does not result in the preemption of local zoning regulations unless

11

specifically provided for in the statute. *Good v. Zoning Hearing Board of Heidelberg Township*, 967 A.2d 421, 428-29 (Pa. Cmwlth.), *appeal denied*, 973 A.2d 1008 (Pa. 2009). Applying *Good*, the City argues that Pennsylvania precedent distinguishes between local ordinances that regulate how a particular activity is conducted (which may be preempted), on the one hand, and local zoning ordinances that regulate where a particular activity can be conducted (that is, a property's use, which may not be preempted), on the other hand. *Id.* at 429. If the General Assembly had intended to preempt local zoning of retail firearms sales, concluded the City, it could have done so, just as it passed legislation in 2012 to modify what is commonly known as the Oil and Gas Act[6] to include section 3304(b)(3),[7] which preempted local restrictions on drilling in the Marcellus Shale Formation.

Pennsylvania's Constitution reads in pertinent part, "[a] municipality which has a home rule charter may exercise any power or perform any function not denied by this Constitution, by its home rule charter or by the General Assembly at any time."[8] Philadelphia has a home rule charter, which is governed by the First Class City Home Rule Act of 1949 (Home Rule Act).[9] As applied to a city of the first class such as Philadelphia, section 18 of the Home Rule Act states: "Notwithstanding the grant of powers contained in this act, no city shall exercise powers contrary to or in limitation or enlargement of, powers granted by acts of the General Assembly which are . . . [a]pplicable in every part of the Commonwealth . .

---

[6] Act of February 14, 2012, P.L. 87, No. 13, *as amended*, 58 Pa.C.S. §§2301-3309.

[7] 58 Pa.C.S. §3304(b)(3).

[8] PA. CONST., art. 9, §2.

[9] Act of April 21, 1949, P.L. 665, *as amended*, 53 P.S. §§13101 – 13157.

12

. [or] [a]pplicable to all the cities of the Commonwealth." 53 P.S. §13133. Our Supreme Court has held that matters of the ownership, possession, transfer, or transportation of firearms, and of their use for personal protection or for the defense of the state, are not the proper subjects of regulation by municipalities, including Philadelphia. *Ortiz*, 681 A.2d at 156.

Here, the case turns on whether section 6120(a) of the Firearms Act preempts zoning action by municipalities where the business of the retail sales of firearms is not prohibited (either *de facto* or *de jure*) by a local government, but is kept within one zoning district by right (the I-3 zone) and is allowable by special exception in two other zones (ICMX and I-2). Because the Zoning Code regulates the location of uses such as a "gun shop," and does not restrict how the business is conducted or whether it may be conducted within the City limits, its zoning regulations as to the retail sales of firearms are not preempted by the Firearms Act. *Good*, 967 A.2d at 429.

Indeed, in the present case, there is no evidence that the City has burdened any citizen's right to the "ownership, possession, transfer or transportation of firearms," as protected by section 6120(a). Accordingly, the trial court did not err when it acknowledged important constitutional rights, as well as the Commonwealth's statewide interest in firearms rights as evidenced in section 6120(a) of the Firearms Act, but found nonetheless that the Zoning Code was not preempted by the same. (Trial court op. at 6-7.)

**Constitutionality**

Appellant asserts as its third issue that the City's Zoning Code is unconstitutional as it relates to firearms because it violates the Second Amendment

to the United States Constitution, as well as article 1, section 21 of the Pennsylvania Constitution. Appellant maintains that because the City's zoning law seeks only to regulate, not restrict, the acquisition of firearms and the maintenance of proficiency in their use, such regulation should be upheld if it passes "intermediate scrutiny," which requires more than "rational basis" review but less than "strict scrutiny." (Appellant's brief at 26.) According to Appellant, the City failed to provide any justification "for the severe limitation on the ability to sell and acquire firearms to a very limited zoning district." (*Id.*) Thus, Appellant contends that under any level of scrutiny, the City's regulation of firearms through the Zoning Code must fail.

The City counters that this is not a Second Amendment case because the Zoning Code does not impose a burden on conduct falling within the scope of the Second Amendment. Instead, the City posits that the Zoning Code is a presumptively lawful regulatory measure that does not interfere with the Second Amendment's core tenant of protecting the right of law-abiding citizens to use firearms to defend "hearth and home." (Appellee's brief at 33-34.) The City also asserts that Appellant failed to demonstrate that the Zoning Code burdened the Second Amendment rights of City residents and Appellant. The City further argues that even if Appellant had shown that the Second Amendment is implicated, its Zoning Code is "appropriate" because it "ensures harmonious development." (Appellee's brief at 33.)

The trial court simply failed to address the constitutional issues raised by Appellant. It opaquely acknowledges that Appellant raised the argument that "the Philadelphia [Zoning] Code is unconstitutional as it relates to gun sales" at page 4 of its opinion and then adds the following cryptic passage, "This Court has rejected

14

such argument and instead accepted the Findings and Conclusions of the [ZBA]." (Trial court op. at 4.)

However, the "Conclusions of the [ZBA]" do not address the claims on unconstitutionality raised by Appellant. On the contrary, as noted *supra*, the ZBA expressly stated that Appellant's "preemption and constitutional arguments are not within the [ZBA's] jurisdiction and therefore are not addressed here." (ZBA's Conclusion of Law No. 15). Given that the trial court "accepted" the ZBA's conclusions, including this one, and does not devote any substantive portion of its opinion to Appellant's claims of unconstitutionality, it can only be concluded that the trial court passed on addressing these issues. That the trial court failed to address these issues is even more obvious by the fact that it expressly addressed Appellant's preemption arguments even though the ZBA had demurred on addressing that issue as well.

Because the trial court failed to address the constitutional arguments preserved and presented for review, the matter must be remanded to the trial court to do so. *See Zoning Board of Adjustment of the City of Philadelphia v. Willits Woods Associates*, 534 A.2d 862, 866 (Pa. Cmwlth. 1987) ("[S]ince the question of the constitutionality of the Philadelphia Zoning Code . . . was properly submitted to the ZBA, we now remand this matter to the trial court for a determination on the constitutional issue."); *London v. Zoning Board of Adjustment* (Pa. Cmwlth., No. 2256 C.D. 2014, filed July 7, 2016), slip op. at 9-10 ("[T]he trial court's order denying [a]pplicant's appeal is vacated and the matter is remanded to the trial court for consideration of the constitutional issues.").

## Conclusion

Appellant offered no evidence to support its argument that the ZBA capriciously disregarded evidence of the manner of classification of uses under the current Zoning Code. Nor did Appellant establish that the Zoning Code was preempted by the Firearms Act. Hence, the trial court did not err to the extent that it rejected these arguments by Appellant.

However, the trial court erred to the extent that it did not address the constitutional arguments raised by Appellant. Indeed, a restriction on an individual's ability to lawfully purchase guns is not insulated from constitutional scrutiny merely because it is cloaked within the imprimatur of the Zoning Code.

In this case, the ZBA did not address the constitutional issues based upon its conclusion that it lacked authority to address the same and the trial court simply failed to address the constitutional concerns raised by Appellant. While such issues may or may not be beyond the jurisdiction of the ZBA, these issues were properly preserved by Appellant on appeal to the trial court. Accordingly, the decision of the trial court is affirmed to the extent it rejected Appellant's argument that the ZBA capriciously disregarded evidence of the manner of classification of uses under the current Zoning Code and that the Zoning Code was preempted by the Firearms Act. However, we remand this case to the trial court to address the constitutional issues raised by Appellant under the Second Amendment of the United States Constitution, as well as under article 1, section 21 of the Pennsylvania

16

Constitution.[10]  In so doing, we direct the trial court to decide these issues on the record that is before it and to not take any additional evidence.[11]

_____

PATRICIA A. McCULLOUGH, Judge

Judges Cohn Jubelirer, Simpson and Fizzano Cannon did not participate in this decision.

_____

[10] Contrary to the Dissent, a remand to the trial court is warranted herein.  As the Dissent notes, Appellant raised both a facial as well as an-applied constitutional challenge to the City's Zoning Code.  However, the ZBA concluded that "constitutional arguments [were] not within [its] jurisdiction and therefore [were] not addressed [in its decision]."  (ZBA's Conclusion of Law No. 15.)  More specifically, Appellant argued first before the ZBA, and later before the trial court, that the restriction on the location of gun shops within the City's Zoning Code constitutes "a serious encroachment on the right to acquire firearms."  *See* R.R. at 167a, 525a.  Moreover, the Dissent mischaracterizes Appellant's argument in its brief regarding the Pennsylvania Constitution as consisting of a single paragraph that merely lists the constitutional provisions at issue and sets forth "a bare conclusion that those provisions are violated."  (Dissent, slip op. at 17.)  However, the Dissent ignores that Appellant's state and federal constitutional arguments are intertwined throughout its brief, *see* Appellant's brief at 25-34, similar to the merger of state and federal constitutional issues this Court encountered in *Caba v. Weaknecht*, 64 A.3d 39 (Pa. Cmwlth.), *appeal denied*, 77 A.3d 1261 (Pa. 2013), a case cited by Appellant.

[11] The Dissent would have us affirm the trial court as to these constitutional issues, but since the trial court did not address them, there is nothing to affirm.  The Dissent also leaps to the conclusion that Appellant's constitutional arguments should be rejected on the basis of the Ninth Circuit's decision in *Teixeira v. County of Alameda*, 873 F.3d 670 (9th Cir. 2017).  The Dissent contends that this case should "inform" the decision in this case and further notes that *Teixeira* is not discussed herein.

It is not discussed for two reasons.  First, it is premature for this Court to rule on Appellant's constitutional issues as these are to be addressed by the trial court.  Second, *Teixeira* is not only not binding upon this Court, it is from a court whose jurisdiction, unlike that of the Third Circuit, does not even encompass the territorial confines of Pennsylvania.  While the Dissent may posit that *Teixeira* should be adopted, the same could just as readily be said about *Ezell v. City of Chicago*, 846 F.3d 888 (7th Cir. 2017), which has been cited for authority by Appellant in support of its constitutional claims.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Gun Range, LLC,            :
             Appellant     :
                          :   No.  1529 C.D. 2016
              v.          :
                          :
City of Philadelphia, Philadelphia :
Zoning Board of Adjustment,    :
Spring Garden Civic Association,  :
Patricia Freeland, Justino Navarro, :
Lawrence Rust, Regina Young,   :
Bryan Miller, Heeding God's Call  :
to End Gun Violence and Susan A. :
Murray                       :

## ***ORDER***

AND NOW, this 7th day of May, 2018, the order of the Court of Common Pleas of Philadelphia County (trial court), dated August 11, 2016, is hereby affirmed in part and vacated in part, and the matter is remanded  consistent with this opinion.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Gun Range, LLC,                  :
                    Appellant       :
                                     :
        v.                           :  No. 1529 C.D. 2016
                                     :  Argued:  May 2, 2017
City of Philadelphia, Philadelphia   :
Zoning Board of Adjustment,          :
Spring Garden Civic Association,     :
Patricia Freeland, Justino Navarro,  :
Lawrence Rust, Regina Young,         :
Bryan Miller, Heeding God's Call     :
to End Gun Violence and Susan A.     :
Murray                               :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


DISSENTING OPINION BY
SENIOR JUDGE PELLEGRINI                    FILED:  May 7, 2018


        While I agree with the majority's resolution of the other issues in this

case, I disagree with the majority that we need to remand this matter to the Court

of Common Pleas of Philadelphia County (trial court) to examine the constitutional

issues regarding the Second Amendment because it is unnecessary since we are not

reviewing the trial court's decision but that of the Philadelphia Zoning Board of

Adjustment (Zoning Board).

This case is informed by an *en banc* Ninth Circuit decision in *Teixeira v. County of Alameda*, 873 F.3d 670 (9th Cir. 2017), which held that there is no right guaranteed under the Second Amendment that gives a person the right to sell guns, but that there is a "core Second Amendment right to keep and bear arms for self-defense [that] 'wouldn't mean much' without the ability to acquire arms." *Teixeira*, 873 F.3d at 677 (citations omitted). It recognized that firearms' dealers may assert that right on behalf of their potential customers. Because The Gun Range does not have an independent Second Amendment right to sell guns and also failed to establish that the zoning restrictions here unreasonably burden gun owners' rights to acquire guns, I would affirm the trial court.

## I.

A short summary of the law regarding rights guaranteed by the Second Amendment is needed to give context to *Teixeira* and how *Teixeira* applies to the facts of this case.

## A.

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, 554 U.S. 570 (2008) (*Heller I*), the United States Supreme Court held, for the first time, that the Second Amendment protects the individual right of law-abiding citizens to possess an operable handgun in the home for self-defense.

The Supreme Court cautioned, however, that this Second Amendment right is "not unlimited" and does not confer a "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller I*, 554 U.S. at 626. The Court noted, for example, that courts historically have concluded that "prohibitions on carrying concealed weapons were lawful under the Second Amendment," and it identified a non-exhaustive list of "presumptively lawful regulatory measures," including "longstanding prohibitions on the possession of firearms by felons and the mentally ill," laws forbidding guns in "sensitive places" like schools and government buildings, and "conditions and qualifications" on the commercial sale of firearms. *Id.*

In 2010, in *McDonald v. City of Chicago*, 561 U.S. 742 (2010), the Supreme Court found rights secured under the Second Amendment to be "fundamental rights" and, through the 14th Amendment, those rights apply to and limit state and local governments' regulations of firearms. While invalidating a Chicago law entirely prohibiting the possession of handguns, the Court in *McDonald* reiterated that a broad spectrum of gun laws remain constitutionally permissible.

**B.**

In cases challenging gun restrictions, courts have adopted a two-step inquiry,[1] which "(1) asks whether the challenged law burdens conduct protected by

_____

[1] *See, e.g.*, *United States v. Chovan*, 735 F.3d 1127, 1136–37 (9th Cir. 2013); *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010); *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010); *United States v. Reese*, 627 F.3d 792, 800 (10th Cir. 2010).

the Second Amendment and (2) if so, directs courts to apply an appropriate level of scrutiny."[2] (Footnote added).

As to the first step of whether the challenged law "imposes a burden on conduct falling within the Second Amendment's guarantee,"[3] this generally turns on "whether the regulation is one of the 'presumptively lawful regulatory measures' identified in *Heller I*[4] or whether the record includes persuasive historical evidence establishing that the regulation at issue" is the type of longstanding law historically understood as consistent with the Second Amendment. *Jackson v. City and County of San Francisco*, 746 F.3d 953, 960 (9th Cir. 2014) (citations omitted).[5]

---

[2] *Chovan*, 735 F.3d at 1136 (citations omitted).

[3] *Chester*, 628 F.3d at 680.

[4] *See Marzzarella*, 614 F.3d at 91 (finding that based on the text and the structure of *Heller I*, "the identified restrictions are presumptively lawful because they regulate conduct outside the scope of the Second Amendment."). In *Heller v. District of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011) (*Heller II*), the District of Columbia Circuit Court, in upholding new District of Columbia regulations regarding firearms, stated that *Heller I* "tells us 'longstanding' regulations are . . . presumed not to burden conduct within the scope of the Second Amendment. . . . This is a reasonable presumption because a regulation that is 'longstanding,' which necessarily means it has long been accepted by the public, is not likely to burden a constitutional right; concomitantly the activities covered by a longstanding regulation are presumptively not protected from regulation by the Second Amendment." *Heller II*, 670 F.3d at 1253.

[5] In examining how long a restriction has to be in existence to be considered "longstanding" and consistent with the Second Amendment, courts have observed that the examples *Heller I* itself identified as "longstanding" and constitutional date not to the Founding Era, but only to the 20th Century. *See Fyock v. Sunnyvale*, 779 F.3d 991, 997 (9th Cir. 2015) ("Gun laws 'need not mirror limits that were on the books in 1791' or 1868 to qualify as presumptively lawful. . . . To the contrary, the laws *Heller [I]* itself identifies as "longstanding" and presumptively lawful are of the same '20th Century vintage' as California's law."); *National*
**(Footnote continued on next page…)**

If a court finds at the first step that a challenged law does, in fact, burden conduct protected by the Second Amendment, it proceeds to step two, and applies "an appropriate form of means-end scrutiny."[6]  In determining the appropriate level of scrutiny, courts have generally focused on the challenged law's burden on Second Amendment rights.[7]  Where the regulation at issue does not prevent law-abiding, responsible individuals from possessing an operable handgun in the home for self-defense, almost all of the federal circuits have held that it should be analyzed under intermediate scrutiny.[8]  "Intermediate scrutiny"

---

**(continued…)**

*Rifle Association of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 700 F.3d 185, 196 (5th Cir. 2012) (*NRA*) ("*Heller [I]* considered firearm possession bans on felons and the mentally ill to be longstanding, yet the current versions of these bans are of mid-20th [C]entury vintage."); *United States v. Skoien*, 614 F.3d 638, 641 (7th Cir. 2010) (*en banc*) ("legal limits on the possession of firearms by the mentally ill also are of 20th Century vintage . . . [s]o although the Justices have not established that any particular statute is valid, we do take from *Heller [I]* the message that exclusions need not mirror limits that were on the books in 1791.").

[6] *Chester*, 628 F.3d at 680 ("If the challenged regulation burdens conduct that was within the scope of the Second Amendment as historically understood, then we move to the second step of applying an appropriate form of means-end scrutiny.").  *See also Heller II*, 670 F.3d at 1252 ("We ask first whether a particular provision impinges upon a right protected by the Second Amendment; if it does, then we go on to determine whether the provision passes muster under the appropriate level of constitutional scrutiny.").

[7] *See NRA*, 700 F.3d at 195; *Ezell v. City of Chicago*, 651 F.3d 684, 703 (7th Cir. 2011) (explaining that the level of applicable scrutiny should be determined by "how close the law comes to the core of the Second Amendment right and the severity of the law's burden on the right").

[8] *See Tyler v. Hillsdale County Sheriff's Department*, 837 F.3d 678 (6th Cir. 2016) (*en banc*); *Baer v. Lynch*, 636 Fed. App'x 695 (7th Cir. 2016); *National Rifle Association v. McCraw*, 719 F.3d 338 (5th Cir. 2013); *Chovan*; *Kachalsky v. County of Westchester*, 701 F.3d 81 (2d Cir. 2012); *United States v. Booker*, 644 F.3d 12 (1st Cir. 2011); *United States v. Masciandaro*, 638 F.3d 458 (4th Cir. 2011); *Heller II; Marzzarella*; *Reese*.

examines whether a law is reasonably related to an important or significant governmental interest.[9]

Now to *Teixeira*.

**II.**

**A.**

At issue in *Teixeira* was a zoning ordinance that required businesses seeking to sell firearms to obtain a permit. A permit for a firearms store could not be granted if, as relevant here, the planned firearms store would be within 500 feet of a residentially-zoned district.

Teixeira and two other individuals wanted to open a gun store in Alameda County. The county planning department informed Teixeira that because he intended to sell firearms, he would need to obtain a conditional use permit. Teixeira was also informed that to receive a conditional use permit for his proposed gun store, he had to comply with a zoning ordinance which, among other things, required that businesses selling firearms be located at least 500 feet away from schools, day care centers, liquor stores or establishments serving liquor, other gun stores, and residentially-zoned districts.

---

[9] *United States v. Virginia*, 518 U.S. 515, 524 (1996). Other levels are on a "rational basis" which presumes the law is valid and asks only whether the statute is rationally related to a legitimate state interest, *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440 (1985), and "strict scrutiny" which asks whether the law is narrowly tailored to serve a compelling government interest. *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 813 (2000).

Teixeira then applied for a conditional use permit. Although staff identified a public need for a licensed firearms dealer and determined that the proposed use was compatible with other land uses in the area and would not adversely affect the health or safety of persons living or working in the vicinity, it also found that the site of the proposed gun shop did not satisfy the zoning ordinance's distance requirement because it was approximately 446 feet from two residential properties in different directions. Based on this finding, staff recommended that the permit application be denied.

Notwithstanding this recommendation, the county zoning board granted Teixeira a variance from the zoning ordinance and approved his application for a conditional use permit. A neighborhood association appealed that decision to the board of supervisors. The board voted to sustain the appeal, overturning the zoning board's decision and revoking the conditional use permit.

**B.**

Teixeira then filed a complaint in the U.S. District Court challenging the board of supervisors' decision to deny him a variance and conditional use permit. Brought on behalf of Teixeira and potential customers, the complaint alleged that the county's actions violated the Second Amendment by preventing would-be customers from buying a gun and by prohibiting Teixeira from selling firearms.

The District Court dismissed the Second Amendment claim, but a panel of judges for the Ninth Circuit revived it by a 2–1 vote. The Ninth Circuit then elected to rehear it *en banc*.

Again, Teixeira argued that the county's zoning ordinance unconstitutionally infringed upon the rights of prospective gun buyers. The Ninth Circuit rejected this argument because gun buyers have "no right to have a gun store in a particular location . . . as long as their access is not meaningfully constrained," *Teixeira*, 873 F.3d at 680, and the county's actions did not meaningfully constrain access to guns. The court noted that there were at least ten gun shops already operating in Alameda County, including a sporting goods store located just 600 feet from Teixeira's planned retail establishment. Because county residents could freely purchase firearms within the county, the court concluded that Teixeira had not plausibly alleged that the county's ordinance impeded any resident of Alameda County who wished to purchase a firearm from doing so. The court noted that it did not need to define the precise scope of any such acquisition right under the Second Amendment to resolve the case because, whatever the scope of that right, Teixeira failed to state a claim that the ordinance impeded Alameda County residents from acquiring firearms.

The Ninth Circuit then turned to Teixeira's main argument that the county's zoning ordinance infringed on his Second Amendment right to sell firearms. He argued that even if there was a gun store on every square block in unincorporated Alameda County and, therefore, prospective gun purchasers could buy guns with exceeding ease, he would still have a right to establish his

own gun store somewhere in the jurisdiction. He alleged that the zoning ordinance infringed on that right by making it virtually impossible to open a new gun store in unincorporated Alameda County. The court rejected this claim as well, finding that the Second Amendment does not confer an independent right to sell firearms.

The court began its analysis by quoting *Heller I*, the U.S. Supreme Court decision establishing an individual right to bear arms, which stated that "[n]othing in our opinion should be taken to cast doubt on . . . laws imposing conditions and qualifications on the commercial sale of arms . . . [which are] . . . presumptively lawful regulatory measures." *Teixeira*, 873 F.3d at 682 (quoting *Heller I*, 554 U.S. at 626-27). *Heller I's* assurance that laws imposing conditions and qualifications on the commercial sale of firearms are presumptively lawful made the court reject Teixeira's claim that retail establishments can assert an independent, freestanding right to sell firearms under the Second Amendment.

Nonetheless, the Ninth Circuit went on to conduct "a full textual and historical review" of the Second Amendment. *Teixeira*, 873 F.3d at 683. Starting with its text, the Ninth Circuit concluded nothing in the specific language of the Second Amendment suggests that sellers fall within the scope of its protection. In its historical review, the court analyzed the 1689 English Bill of Rights, the precursor to our Second Amendment, as well as William Blackstone's influential commentaries on English law. It found that those documents all framed the right to bear arms as one held by individuals, with no attendant right to engage in gun commerce. It went on to find that so did colonial laws in America – which,

like the Second Amendment itself, were designed to preserve state militias, not to safeguard a freewheeling arms trade. Moreover, colonial governments routinely regulated the commercial sale of firearms. The court went on to point out that this was consistent with the Fourth Circuit's determination in its unpublished decision in *United States v. Chafin*, 423 Fed. App'x 342, 344 (4th Cir. 2011), that no historical authority "suggests that, at the time of its ratification, the Second Amendment was understood to protect an individual's right to *sell* a firearm." (Emphasis in original.)

After this lengthy historical analysis, the Ninth Circuit concluded that at the time of its ratification, the Second Amendment was not understood to create a commercial entitlement to sell guns if the right of the people to obtain and bear arms was not compromised. The court rejected an analogy to the First Amendment for booksellers because bookstores and similar retailers that sell and distribute various media, unlike gun sellers, are themselves engaged in conduct directly protected by the First Amendment. It held that Teixeira could not state a Second Amendment claim based solely on the ordinance's restriction on his ability to sell firearms.

The Ninth Circuit went on to hold, though, that "the core Second Amendment right to keep and bear arms for self-defense wouldn't mean much without the ability to acquire arms." *Teixeira*, 873 F.3d at 677 (citations omitted). It recognized that firearms dealers may assert that right on behalf of their potential customers. The court explained that Teixeira had not alleged that the inability to open a new firearms store interfered with the ability of Alameda

County residents to acquire firearms. Notably, the court recounted that evidence established that without the new gun store, Alameda County residents may freely purchase firearms within the county, given that the county was already home to ten gun stores, including one that stood 600 feet away from the proposed site of the new store. Because Teixeira and his partners could not show that the zoning ordinance burdened county residents' right to acquire firearms, the court declined to determine the precise scope of the right to acquire firearms and the appropriate level of review to analyze claims of a deprivation of that right.

Furthermore, in explaining its ruling, the Ninth Circuit distinguished the Alameda County ordinance from the law at issue in *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011), the case relied on by The Gun Range, because the Chicago ordinance effectively barring firing ranges likely burdened the Second Amendment's core right to possess a firearm for self-defense. These cases differed because, the Ninth Circuit stated, the Chicago ordinance effectively precluded nearly any shooting range from operating within the city's boundaries and, thus, severely limited the city residents' Second Amendment right to maintain firearm proficiency. In *Teixeira*, the court reasoned, Alameda County residents had many available, local options to exercise their right to acquire firearms without the new store. I would adopt the reasoning of the Ninth Circuit in *Teixeira* that led to its holding that the Second Amendment does not independently protect a proprietor's right to sell firearms, as well as its holding that for a firearms seller to make out a derivative claim on behalf of gun owners, there has to be a showing that prospective gun owners' access to guns was impeded by the ordinance.

Now to the facts of this case.

### III.

### A.

The Gun Range applied to the Department of Licenses & Inspections (L&I) to add the use of "gun sales" to the existing "gun range." Gun shops[10] are permitted in 1-3 zoning districts, and the ICMX and 1-2 zoning districts by special exception as long as they are not within 500 feet of a residential district. New Zoning Code, CODE § 14-603(13)(b)(.1)(.c). However, a gun shop is not permitted in a CMX-2 zoning district. L&I denied the application because a "gun shop" was not permitted in a CMX-2 commercial district and, even if the use was permitted, it still would be prohibited within 500 feet of a residential district.

The Gun Range presented two witnesses: the L&I examiner who explained why the application was denied and Yuri Zalzman, a principal of The Gun Range, who discussed his existing business and his efforts to open a gun shop. The Gun Range also submitted a "packet" of documents to the zoning board. Those documents included a map reflecting that the portions of the 1-3 district that is open to gun shops, taking into consideration the residential restriction. It showed that 3.74% of the city, or about 3,400 acres, were open to gun shops. It did not provide any evidence about ICMX and 1-2 zoning districts where gun shops were permitted by special exception.

---

[10] The Zoning Code defines a "gun shop" as a "retail sales business engaged in selling, leasing, purchasing, or lending of guns, firearms, or ammunition." New Zoning Code, CODE § 14-601(6)(c)(2).

At the hearing, The Gun Range admitted that there were a number of gun shops already operating in the city. The Gun Range's counsel conceded there were "about six or seven" shooting ranges that also sold guns. Mr. Zalzman also testified that there were other, stand-alone gun shops without shooting ranges in the city. He testified that there were "a couple" of such shops. Including both gun shops with an adjoining shooting range and stand-alone gun shops, there were around ten gun shops in the city operating at the time of the hearing.

The Gun Range also presented no evidence that it could not build a gun shop elsewhere in the City in compliance with the City's zoning laws or even that it faced any difficulties in doing so. No gun owner discussed the impact of the city's zoning laws on his ability to buy a gun. The Board did not preclude The Gun Range from offering any evidence.

**B.**

Constitutional challenges are of two kinds: facial challenges or as-applied challenges. *Lehman v. Pennsylvania State Police*, 839 A.2d 265, 275 (Pa. 2003). "[A]n as-applied attack ... does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *Weissenberger v. Chester County Board of Assessment Appeals*, 62 A.3d 501, 505 (Pa. Cmwlth. 2013) (quoting *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011)).

While an issue must be raised before an administrative agency to be preserved for appellate review, Pa.R.A.P. 1551(a), an exception to this rule exists

for a facial challenge to the constitutionality of a statute. "In a facial challenge, a party is not required to exhaust administrative remedies because 'the determination of the constitutionality of enabling legislation is not a function of the administrative agencies thus enabled.' *Borough of Green Tree v. Bd. of Prop. Assessments*, 459 Pa. 268, 328 A.2d 819, 825 (1974). Accordingly, facial challenges to a statute's constitutionality need not be raised before the administrative tribunal to be reviewed by an appellate court . . . ." *Lehman*, 839 A.2d at 275.

While facial challenges can be raised at any time, as-applied constitutional challenges must be raised before the agency because, rather than the constitutionality of the statute itself, the issue is how the constitutional provision, as applied to the individual making the challenge, has an unconstitutional result. *Lehman*.

In this case, The Gun Range made a facial as well as an "as-applied" challenge. In its facial challenge, it contended that the Second Amendment gives it the right to sell guns in any zone that permits anything to be sold. For the same reasoning set forth in *Teixeira*, I would hold that the Second Amendment does not give a person the right to sell guns.

In its "as-applied" challenge, it argues that the zoning restrictions here unreasonably burden a gun owner's right to acquire guns by limiting where gun shops could be located. As the advancing party, The Gun Range holds the evidentiary burden. That evidentiary burden had to be met before the Zoning

Board. *Lehman.* Before the Zoning Board, The Gun Range did not contend that anyone's right to acquire weapons was unduly restricted, only that The Gun Range's right to sell guns was unduly restricted, a right not protected by the Second Amendment.

However, on appeal to us, it does make an argument that the ten gun shops that its owner said existed in Philadelphia are not enough to serve those persons who desire to purchase guns. Other than the argument, there is no evidence that ten stores are inadequate to meet the needs of those in Philadelphia who want to purchase guns. Absent such a showing that existing gun shops in Philadelphia, other nearby gun shops located outside of Philadelphia, and gun shows are insufficient to serve those in Philadelphia who want to buy weapons, a derivative Second Amendment claim has not been established.

Because nothing in this case showed that the City's ordinance in any way violated anyone's Second Amendment right by impeding a city resident who wished to purchase a firearm from doing so, I would hold that The Gun Range did not make out its "as-applied" challenge.

## C.

As to its argument that the zoning restrictions violate the Pennsylvania Constitution, The Gun Range just lists the Pennsylvania Constitutional provisions that it suggests apply and then concludes that the zoning restrictions violate those provisions. Its entire argument regarding the state constitution is as follows:

Additionally, these rights are specifically protected by the Pennsylvania Constitution. Pursuant to Pa. Const. art. I, § 1, citizens of the Commonwealth have an inherent right of "acquiring, possessing and protecting property." Further, pursuant to Pa. Const. art. I, § 21, "[T]he right of the citizens to bear arms in defense of themselves and the State shall not be questioned," which is made inviolate by § 25.[11] By attempting to limit the ownership and sale of guns within the City of Philadelphia, the Code violates these inherent rights of citizens of the Commonwealth and the Pennsylvania Constitution and therefore, this portion of the Code is unconstitutional.

(The Gun Range's Brief at 30) (footnote added). This argument does not offer a different methodology to be used in interpreting article 1, section 21 of the Pennsylvania Constitution than the one adopted by the United States Supreme Court in *Heller I*, used to determine whether a state action unconstitutionally infringed on a gun owner's right to self-defense. All that it does is set forth a bare conclusion that those provisions are violated.[12] Since *Heller I*, the Superior Court

---

[11] Article 1, section 25 of the Pennsylvania Constitution provides:

> To guard against transgressions of the high powers which we have delegated, we declare that everything in this article is excepted out of the general powers of government and shall forever remain inviolate.

Pa. Const. art I, § 25.

[12] Pa.R.A.P. 2119(a) provides:

> The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

**(Footnote continued on next page…)**

has used that analysis in deciding whether a state gun restriction violated our Constitution. *See Commonwealth v. McKown*, 79 A.3d 678, 687 (Pa. Super. 2013).

Following the scholarly and well-reasoned opinion of the Ninth Circuit in *Teixeira* that strictly followed the methodology that the Supreme Court set forth in *Heller I*, I would not remand and would hold that The Gun Range has not made out that the regulation here infringes upon anyone's Second Amendment rights, or any right under the Pennsylvania Constitution, and would affirm the trial court.

Accordingly, I respectfully dissent.

_____
DAN PELLEGRINI, Senior Judge

---

**(continued…)**

A mere claim of unconstitutionality, without more, cannot be addressed. The Gun Range has simply failed to explain to the Court, as required by Pa.R.A.P. 2119(a), how the Code infringes upon the individual rights guaranteed by article I of the Pennsylvania Constitution. *See Bruce L. Rothrock Charitable Foundation v. Zoning Hearing Board of Whitehall Township*, 651 A.2d 587, n.9 (Pa. Cmwlth. 1994). We do not consider the article I claims because they have not been presented adequately to the Court. *Wert v. Department of Transportation*, *Bureau of Driver Licensing*, 821 A.2d 182, 184 (Pa. Cmwlth. 2003).