Scott L. GOOD and Mary
J. Good, Appellants.

v.

ZONING HEARING BOARD OF
HEIDELBERG TOWNSHIP
and Heidelberg Township.

Commonwealth Court of Pennsylvania.

Argued Dec. 8, 2008.
Decided Jan. 9, 2009.

Paul C. Bametzreider, Lebanon, for appellants.

Keith L. Kilgore, Lebanon, for appellee, Zoning Hearing Board of Heidelberg Township.

Amy B. Leonard, Lebanon, for appellee, Heidelberg Township.

BEFORE: FRIEDMAN, Judge,[1] and SIMPSON, Judge, and BUTLER, Judge.

OPINION BY Judge SIMPSON.

In this zoning appeal, Scott L. Good and Mary J. Good (collectively, Applicants) challenge the Zoning Hearing Board of Heidelberg Township's (ZHB) decision that granted their request for a special exception to operate a dog kennel, but attached 28 conditions to the grant of the special exception. On Applicants' appeal, the Court of Common Pleas of Lebanon County (trial court) struck two of the conditions. Applicants ask this Court to strike an additional eight conditions on the grounds these conditions are preempted by federal or state law and do not serve a legitimate zoning purpose. Upon review, we affirm.

---

1. The decision in this case was reached before January 1, 2009, when Judge Friedman assumed the status of senior judge.

The ZHB made the following pertinent findings. Applicants own the property located at 276 Canaan Grove Road, Newmanstown, Heidelberg Township (subject property). The subject property, which lies in the Township's agricultural zoning district, is improved with a single-family dwelling, two intensive animal poultry homes, and two barns that are not currently in use.

Applicants seek to construct a building to operate a dog kennel. Dog kennels are permitted by special exception in the agricultural zoning district. As such, Applicants applied for a special exception pursuant to Section 6.2(M)(2) of the Heidelberg Township Zoning Ordinance (Ordinance).

The proposed kennel would be 14 feet by 38 feet, with a painted steel exterior siding and an interior peek of 12 feet. The kennel would consist of 16 pens, each four feet by four feet.[2] Each kennel would also have a pet door for access to an outside area. The interior of the building would have radiant heat and air conditioning. Applicants proposed to clean the pens daily and spread feces generated by the kennel throughout the subject property.

Applicants also proposed to construct two separate dog exercise areas adjacent to the kennel. Ingress and egress would be from a paved driveway, 16-feet wide from Canaan Grove Road in a westward direction, approximately 400 feet to the last poultry barn and then a 12-foot wide gravel driveway approximately 400 feet to the kennels. Parking for customers would be on a macadam driveway adjacent to Applicants' home.

The proposed kennel would be at least 400 feet from the eastern property line, 450 feet from the western property line, 700–800 feet from the southern property line, and approximately 700 feet from the northern property line. The kennel would not be visible to any surrounding landowners because of the topography of the subject property as well as woodlands surrounding most of the subject property. There would be one "dusk-to-dawn" light that would shine directly downward with no glare to surrounding landowners.

Applicants currently raise English Bulldogs, but no permit is needed from the Department of Agriculture because of the limited number of dogs housed on the subject property. Applicants will apply for a license from the Department of Agriculture to continue to raise English Bulldogs; the license would allow Applicants to raise up to 100 pups. Department of Agriculture regulations would also permit up to two mature dogs of between 50 and 60 pounds in each interior kennel. The sale of the pups would be retail from Applicants' home by appointment and not wholesale to pet stores.

After hearing, the ZHB issued a decision in which it granted Applicants' special exception request subject to 28 conditions. Applicants appealed to the trial court, challenging the imposition of the conditions.

Without taking additional evidence, the trial court affirmed in part, and reversed in part. Specifically, the trial court struck two conditions, but affirmed the remaining conditions. This appeal by Applicants followed.[3]

2. Before the ZHB, Applicants explained they proposed to construct interior pens four feet by four feet in size, Reproduced Record at 57a; however, the plans submitted by Applicants show interior pens of three feet, eleven inches, by four feet. *See* Certified Record, ZHB Hearing, 2/28/07, Ex. 7.

3. Because the parties presented no additional evidence after the ZHB's decision, our review is limited to determining whether the ZHB

In this appeal, Applicants challenge conditions 1, 3, 4, 7, 17, 19, 25 and 27, imposed by the ZHB, which state:

1. The size of the kennel be 14′ × 38′;

* * * *

3. The inside pens of 4′ × 4′ be limited to one dog over 10 weeks old with adequate bedding with an outside pen connected with a pet door 4′ × 6′; or in the alternative

4. Two dogs per pen of 4′ × 8′ with adequate bedding with an outside pen connected with a pet door of 6′ × 8′;

* * * *

7. The entire interior shall be heated and air conditioned. The inside heat at the dog level shall be between 68 and 75. There shall also be provided natural ventilation for adequate air circulation;

* * * *

17. Dead dogs would be disposed of off site by a reputable carcass removal service with written verification to the Township;

* * * *

19. The dogs be fed by hand;

* * * *

25. The dogs be exercised daily;

* * * *

27. The dogs be located indoors between 9:00 p.m. and 7:00 a.m. . . .

ZHB Op. at 9–11.

### I. Federal Preemption

 Applicants first assert the trial court and the ZHB erred in determining conditions 1, 3, 4, 7 and 19 are not preempted by federal law. They argue conditions relating to the size of the pens, the number of dogs allowed in each pen, and the temperature of the pens, are governed by the Animal Welfare Act (AWA), 7 U.S.C. §§ 2131–2159, and its attendant regulations, which are enforced by the U.S. Department of Agriculture. Applicants contend 9 C.F.R. §§ 3.1–3.6 contains regulations regarding operation procedures for the housing facilities for dogs, while 9 C.F.R. §§ 3.7–3.19, sets forth requirements for feeding, exercising, and cleaning the dogs.

As to the specific conflicts between the challenged conditions and federal law, Applicants argue the ZHB imposed condition 19, which requires dogs be fed by hand, but 9 C.F.R. § 3.9 allows dogs to be fed dry food with self-feeders. Additionally, they assert, condition 7 requires the temperature in the kennel remain between 68 and 75, while Section 3.2 of the regulations states the temperature must not fall below 45 nor rise above 85 for more than four consecutive hours. Further, they argue, the ZHB imposed several conditions regarding the size of the kennel and pens (conditions 1, 3 and 4), but Section 3.6(c) provides a detailed formula to calculate the required dimensions of each pen.

Further, Applicants distinguish *DeHart v. Town of Austin, Indiana*, 39 F.3d 718 (7th Cir.1994), relied on by the trial court, in which the Seventh Circuit Court of Appeals held Congress did not intend the AWA to preempt state or local regulation of animal welfare. They assert that unlike in *DeHart*, where the town enacted a local ordinance regulating wild animals, the ZHB here did not enact a new ordinance; rather, it imposed conditions on the grant of the special exception. Applicants concede the Township has authority to enact a local ordinance that "refines" the terms of the AWA. However, they contend, because imposition of conditions does not constitute

committed an abuse of discretion or an error of law. *Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807 (Pa.Cmwlth.2005).

enactment of an ordinance, the conditions are preempted by federal law. Applicants further contend the ZHB exceeded its authority by acting as a legislative body here.

■ A federal statute may be interpreted as preempting a state's traditional police power only if such result is clearly intended by Congress. *Bayada Nurses, Inc. v. Dep't of Lab. & Indus.*, 958 A.2d 1050 (Pa.Cmwlth.2008). As a general rule, federal preemption of a state's police power is not favored. *Id.*

In *Mastrocola v. Southeastern Pennsylvania Transportation Authority*, 941 A.2d 81 (Pa.Cmwlth.2008), this Court recently explained:

The principle of federal preemption of state law is derived from Article VI, Clause 2 of the United States Constitution, *i.e.*, the Supremacy Clause. Under the Supremacy Clause, federal law is the supreme law of the land and any conflicts between federal and state laws must be resolved in favor of federal law. *Krentz v. Consolidated Rail Corporation*, 589 Pa. 576, 595, 910 A.2d 20, 31–32 (2006). In *Office of Disciplinary Counsel v. Marcone*, 579 Pa. 1, 855 A.2d 654 (2004), the Pennsylvania Supreme Court explained preemption as follows:

There are three ways in which a state law may be preempted. First, state law may be preempted where the United States Congress enacts a provision which expressly preempts the state enactment. Likewise, preemption may be found where Congress has legislated in a field so comprehensively that it has implicitly expressed an intention to occupy the given field to the exclusion of state law. Finally, a state enactment will be preempted where a state law conflicts with a federal law. Such a conflict may be found in two instances, when it is impossible to comply with both federal and state law or where the

state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Id.* at 17, 855 A.2d at 664 (internal citations and quotations omitted).

*Mastrocola*, 941 A.2d at 88–89 (footnote omitted).

The purposes of the AWA are: "(1) to insure that animals intended for use ... as pets are provided humane care and treatment; (2) to assure the humane treatment of animals during transportation in commerce; and (3) to protect the owners of animals from the theft of their animals by preventing the sale or use of animals which have been stolen." *See* 7 U.S.C. § 2131.

Applicants cite no authority suggesting Congress intended the AWA to bar state and local regulation of animals. Indeed, the statute itself expressly provides for such regulation. *See* 7 U.S.C. § 2143(a)(8) ("Paragraph (1) shall not prohibit any State (or a political subdivision of such State) from promulgating standards in addition to those standards promulgated ... under paragraph (1)."). In addition, the AWA states, "[t]he Secretary [of Agriculture] is authorized to cooperate with the officials of the various States or political subdivisions thereof in carrying out the purposes of this chapter and of any State, local, or municipal legislation or ordinance on the same subject." 7 U.S.C. § 2145(b). Based on this statutory language, we conclude that neither express nor field preemption applies.

This conclusion is supported by decisions elsewhere. Indeed, where courts considered whether the AWA preempts local regulation of animal ownership, breeding, or sale, they found no preemption. *See, e.g., DeHart*, 39 F.3d at 722 (rejecting AWA preemption challenge to local ordinance barring ownership of dan-

gerous animals; stating "it is clear that the [AWA] does not evince an intent to preempt state or local regulation of animals or public welfare" and "expressly contemplates state and local regulation of animals"); *Kerr v. Kimmell*, 740 F.Supp. 1525, 1530 (D.Kan.1990) (rejecting AWA preemption challenge to state licensing scheme for sale and breeding of dogs; noting "Congress anticipated that states would remain active in this area of traditional state interest."). *See also Hendricks County Bd. of Zoning Appeals v. Barlow*, 656 N.E.2d 481 (Ind.Ct.App.1995); *Rio Grande Kennel Club v. City of Albuquerque*, 144 N.M. 636, 190 P.3d 1131 (Ct. App.2008). Based on this authority, and the lack of any contrary authority cited by Applicants, there is no basis to conclude the AWA preempts local regulation of animal ownership, breeding or sale.

■ Additionally, we reject Applicants argument that, although a municipality may enact an ordinance pertaining to the care or treatment of dogs that is not in conflict with the AWA, the ZHB here is not permitted to attach conditions that refine federal law and regulations because it lacks legislative authority. Although Applicants are correct the ZHB is not a legislative body, *see Greth Development Group, Inc. v. Zoning Hearing Board of Lower Heidelberg Township*, 918 A.2d 181 (Pa.Cmwlth.), *appeal denied*, 593 Pa. 742, 929 A.2d 1163 (2007), Section 912.1 of the Pennsylvania Municipalities Planning Code (MPC)[4] specifically authorizes the ZHB to "attach ... reasonable conditions and safeguards ... as it may deem necessary to implement the purposes of this act and the zoning ordinance." As explained below, the conditions imposed by the ZHB do not

conflict with federal law; therefore, there is no conflict preemption.

Conditions 1, 3, and 4 relate to the size of the kennel, the size of each interior pen and the number of dogs permitted in each pen. Federal regulations set forth a formula for calculating the size of individual pens relative to the size of the dog. 9 C.F.R. § 3.6(c). Despite pointing out that federal regulations provide a formula for calculating the size of the pens, Applicants do not explain *how* conditions 1, 3 and 4 actually conflict with the federal regulations. In addition, testimony presented by Applicants before the ZHB indicated *they proposed* to build a 14–foot by 38–foot kennel, with interior pens measuring 4 feet by 4 feet, which is consistent with the measurements set forth in the conditions imposed by the ZHB. Reproduced Record (R.R.) at 56a–57a. Thus, it is unclear why Applicants now claim this condition is preempted.

Condition 7 requires the interior of the kennel to be heated and air conditioned and requires the temperature be maintained between 68 and 75. Applicants assert this condition conflicts with 9 C.F.R. § 3.2(a), which states the temperature must not fall below 45 and must not rise above 85 for more than 4 consecutive hours when dogs are present. In resolving this issue, the trial court stated:

Resolution of this issue is simple: the [ZHB] has elected to specify a temperature range, *within the minimum established by the CFR*, for the proposed kennel temperatures. As discussed above, municipalities are permitted to further refine the CFR minimum standards, without contradicting those stan-

---

4. Act of July 31, 1968, P.L. 805, *as amended*, added by Act of December 21, 1988, P.L.

1329, 53 P.S. § 10912.1.

dards, and that is precisely what is happening here.

Tr. Ct., Slip Op. at 6 (emphasis in original).

Under the trial courts interpretation, it is possible to comply with both federal regulations and local conditions. Also, local conditions do not stand as an obstacle to the purposes of the AWA. Accordingly, we discern no error in the trial courts analysis in upholding the condition.

Condition 19 requires the dogs be fed by hand. Applicants assert this condition conflicts with 9 C.F.R. § 3.9(b), which states "self-feeders may be used for the feeding of dry food." While Applicants now challenge this condition, they offered testimony before the ZHB indicating they would "hand feed" the dogs "every day." R.R. at 69a. Further, as explained by the trial court:

It falls to the Court to interpret the meaning of "by hand" versus "self-feeder" and to determine if these feeding methods are in conflict or if one is simply a refinement of the other. Initially, we opine that "by hand" does not mean that a kennel owner or employee must feed each dog directly out of his or her own hand; this is simply ridiculous where the venture contemplates more than just a few dogs. As such, we hold that "by hand" means that someone measures out food for each dog, scooping that dogs food into a bowl or such, and delivers that food to each dog. In contrast, the U.S. Court of Claims explained that a "self-feeder" is a silo that "when filled with feed, permits cattle to feed out of openings at the base which are kept stocked by gravity flow." *Mock, et al. v. U.S.*, 164 Ct.Cl. 473 (1964). In short, the only time a person comes in contact with the food in a self-feeder is when the person loads the silo with food for all the animals.

Essentially, the difference is that by-hand feeding requires a person to load each dogs bowl, while self-feeding requires a person to load the silo so that the food slides into an opening for the dog to feed himself. Here, the [ZHB] has required that [Applicants] measure each dogs food into some sort of receptacle and deliver it to that dog, rather than simply letting the dog stick its head in an opening whenever it chooses. We hold that the [ZHBs] condition is simply a specification, from among the two methods approved by the CFR, of feeding the dogs; the CFR permits individual bowl feeding or silo-filled self-feeders, and the [ZHB] has specified individual bowl-feeding, or hand-feeding, as they have termed it.

Tr. Ct., Slip Op. at 6–7. Again, we agree with the trial courts analysis on this condition.

## II. State Preemption

Applicants next assert condition 17, which requires dog carcasses be disposed of off-site by a reputable carcass removal service, is preempted by state law. Specifically, they argue, Section 2352(a) of the Domestic Animal Law, 3 Pa.C.S. § 2352(a), provides that dead domestic animals may be disposed of by composting, and Section 2341 of the Domestic Animal Law, 3 Pa. C.S. § 2341, states the Pennsylvania Department of Agriculture has authority to regulate activities relating to domestic animals. Applicants also note Section 2389 of the Domestic Animal Law, 3 Pa.C.S. § 2389, states that the statute preempts local law regarding the procedure for disposal of dead animals. Based on these provisions, Applicants maintain condition 17 is expressly preempted by state law. Applicants also point out the ZHB here made no finding as to how the method of disposal permitted by state law is somehow deficient.

In *Nutter v. Dougherty*, 595 Pa. 340, 345–46, 938 A.2d 401, 404 (2007), our Supreme Court explained state preemption as follows:

> Before relating the background of this case, it is necessary to establish, in broad strokes, the principle of state preemption of local lawmaking authority and its several forms. In *Department of Licenses and Inspections, Board of License and Inspection Review v. Weber*, 394 Pa. 466, 147 A.2d 326 (1959), this Court explained two of the three closely related forms of preemption as follows:
>
> > Of course, it is obvious that where a statute specifically declares it has planted the flag of preemption in a field, all ordinances on the subject die away as if they did not exist. It is also apparent that, even if the statute is silent on supersession, but proclaims a course of regulation and control which brooks no municipal intervention, all ordinances touching the topic of exclusive control fade away into the limbo of 'innocuous desuetude.'
>
> *Id.* at 327. In addition to those two forms of preemption, respectively "express" and "field preemption," there is also a third, "conflict preemption," which acts to preempt any local law that contradicts or contravenes state law. *See Mars Emergency Medical Servs. v. Township of Adams*, 559 Pa. 309, 740 A.2d 193, 195 (1999) (citing, *inter alia*, *W. Pennsylvania Rest. Ass'n v. Pittsburgh*, 366 Pa. 374, 77 A.2d 616, 619–620 (1951)) . . . .

Section 2389 of the Domestic Animal Law, entitled "Preemption of local laws and regulations," states:

> *This chapter and its provisions are of Statewide concern and shall have eminence over any ordinances, resolutions and regulations of political subdivisions which pertain to* transmissible diseases of domestic animals as defined in this chapter; the whole field of regulation regarding the identification of domestic animals; the detection, containment or eradication of dangerous transmissible diseases and hazardous substances; the licensure of domestic animal or dead domestic animal dealers, agents and haulers; *the procedure for disposal of dead domestic animals* and domestic animal waste; the procedure for the slaughter and processing of domestic animals; humane husbandry practices and the licensure and conditions of garbage feeding businesses.

3 Pa.C.S. § 2389 (emphasis added).

Section 2352(a)(4) of the Domestic Animal Law provides:

> (4) Dead domestic animals . . . shall be disposed of *only in accordance with one of the following methods* or a method hereafter approved by the department:
> (i) Burial in accordance with regulations governing water quality.
> (ii) Incineration in accordance with regulations governing air quality.
> (iii) Processing by rendering, fermenting, composting or other method according to procedures and product safety standards established by the department.

3 Pa.C.S. § 2352(a)(4) (emphasis added).

Here, the ZHB imposed condition 17, which requires dead dogs be disposed of off site by a reputable carcass removal service with written verification to the Township. We conclude this condition is not expressly preempted by the Domestic Animal Law.

Specifically, although the Domestic Animal Law states that the statute preempts local regulation of the procedure for disposal of dead domestic animals, and dead domestic animals may be disposed of by

burial, incineration or processing, the challenged condition does not attempt to regulate *the method of disposal* for dog carcasses. Rather, it merely requires off-site disposal. Local regulation of the *location* (as opposed to the method) of dead animal disposal is not expressly prohibited by the preemption provision in the Domestic Animal Law; therefore, condition 17 is not preempted by state law.

This result is consistent with preemption cases in the land use area that distinguish between local ordinances that regulate the method in which a particular activity is conducted (often preempted), from zoning ordinances that constitute typical land use controls, i.e., location of uses (not preempted). *Compare Liverpool Twp. v. Stephens*, 900 A.2d 1030 (Pa.Cmwlth.2006) (ordinance regulating application of waste on property preempted by less strict regulations under the Solid Waste Management Act[5]) *with Hoffman Mining Co., Inc. v. Zoning Hearing Bd. of Adams Twp.*, 958 A.2d 602 (Pa.Cmwlth.2008) (Surface Mining Conservation and Reclamation Act[6] (SMCRA) does not preempt local zoning ordinance setback requirement for mining activities; challenged ordinance provision did not concern method by which coal was derived from the ground as regulated by SMCRA; rather, it merely constituted a typical land use control).

### III. Zoning Purpose

■ As a final issue, Applicants assert the ZHB determined their proposal complied with the requirements necessary to obtain a special exception, and, therefore, the ZHB found the proposed use was not inconsistent with promotion of the public health, safety and welfare. They contend the ZHB then exceeded its authority by imposing conditions 1, 3, 4, 7, 17, 19, 25

and 27 on the grant of the special exception. To that end, Applicants maintain the conditions imposed are unreasonable because they do not serve a zoning purpose and relate more to maintenance of dogs than to anything contained in the Ordinance.

Additionally, they argue the ZHB made no findings to justify imposition of the conditions and there is no basis in the record to justify the conditions. Applicants contend the record contains statements of members of the public regarding their broad objections to "puppy mills," but such broad objections cannot form the basis for formulation of the conditions imposed here. They also argue the conditions do not serve to make the proposed use more compatible with the agricultural zoning district. They contend the record lacks evidence to indicate the proposed use would harm surrounding property owners, particularly since none of their neighbors objected to the proposed kennel.

Applicants further assert that although the ZHB imposed condition 27, which restricts the hours during which dogs must remain indoors in order to alleviate noise concerns, none of Applicants' neighbors testified to such concerns. In fact, they argue, two neighbors testified in support of the proposed kennel. In addition, Applicants contend that while the ZHB imposed condition 25 (daily exercise for dogs) because the Township Board of Supervisors recommended this condition, the Supervisors did not offer testimony as to the basis for this recommendation. They also argue the record lacks evidence as to why feeding dogs by hand relates to a valid zoning purpose. In short, they contend the ZHB did not explain *how* conditions 1,

---

**5.** Act of July 7, 1980, P.L. 380, *as amended,* 35 P.S. §§ 6018.101–6018.1003.

**6.** Act of May 31, 1945, P.L. 1198, *as amended,* 52 P.S. §§ 1396.1–1396.31.

3, 4, 7, 17, 19, 25 and 27 serve a valid zoning purpose.

In *Coal Gas Recovery, L.P. v. Franklin Township Zoning Hearing Board, Greene County*, 944 A.2d 832 (Pa.Cmwlth.2008), this Court recently explained:

A special exception is a use that is expressly permitted by a zoning ordinance. *Broussard v. Zoning Board of Adjustment of the City of Pittsburgh*, 831 A.2d 764, 769 (Pa.Cmwlth.2003) [*aff'd*, 589 Pa. 71, 907 A.2d 494 (2006).] Once an applicant for a special exception proves that its proposed use meets the criteria found in the zoning ordinance, "it is presumed that the local legislature has already considered that such use satisfies local concerns for the general health, safety and welfare and that such use comports with the intent of the zoning ordinance." *Id.* at 772.

Nevertheless, Section 912.1 of the [MPC] ... provides, in relevant part, that a zoning hearing board, while granting a special exception,

*may attach such reasonable conditions and safeguards, in addition to those expressed in the ordinance, as it may deem necessary to implement the purposes of this act and the zoning ordinance.*

However, the ability to impose a condition on a special exception is not unfettered. Conditions must be reasonable and must find support in the record warranting the imposition of such conditions; otherwise, the imposition of conditions constitutes an abuse of discretion. *Sabatine v. Zoning Hearing Board of Washington Township*, 651 A.2d 649, 655 (Pa.Cmwlth.1994). "[T]he [b]oard is not required to support the imposition

of conditions; rather, the opposite is true-property owners are required to show that the imposition of conditions was an abuse of discretion." [*Leckey v. Lower Southampton Township Zoning Hearing Bd.*, 864 A.2d 593, 596 (Pa. Cmwlth.2004) [(en banc).]][10]

---

[10] In *Leckey*, this Court described the standard of review of conditions attached to the grant of a special exception as follows:

... a court reviews a challenge to the reasonableness of those conditions; it does not determine whether there is substantial evidence, which is a "fact standard," but whether those conditions constitute an abuse of discretion.

*Id.* at 596. As explained in several other cases, the imposition of a condition when there is no evidence in the record to support the condition is manifestly unreasonable and an abuse of discretion. *See Berger v. Zoning Hearing Board of the Borough of Mifflinburg*, 85 Pa. Cmwlth. 480, 482 A.2d 1184 (1984); *Abernathy v. Zoning Hearing Board of Hampton Township*, 119 Pa.Cmwlth. 193, 546 A.2d 1311 (1988); *Sabatine, supra.*

944 A.2d at 838–39 (emphasis added).[7]

█ Further, although a municipal body may attach reasonable conditions in approving a special exception, the conditions can not be so onerous as to bar the use, and broad policy statements may not form the basis for such conditions. *Ethan–Michael, Inc. v. Bd. of Supervisors of Union Twp.*, 918 A.2d 203 (Pa.Cmwlth.2007). Additionally, conditions imposed on the grant of a special exception should make the use more compatible with surrounding zoning district. *Leckey.*

---

[7] An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overwritten or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence of record, discretion is abused. *Leckey.*

The stated purpose of the Ordinance is to promote the health, safety, morals and general welfare of the Township. R.R. at 194a. Similarly, the MPC is intended to, among other things, protect and promote the safety and health of the public. Section 105 of the MPC, 53 P.S. § 10105.

Here, in imposing the conditions, the ZHB explained:

The [ZHB], in granting a [s]pecial [e]xception, has the authority to impose reasonable conditions. [Applicants] provided at the hearing reasonable conditions they thought were appropriate as did [the] Township. [Applicants] agreed the conditions requested by the Township were on [their] face reasonable. In addition, numerous witnesses appeared at the first hearing expressing concerns regarding the care and treatment of the dogs and the conditions in which they lived within the kennels. The [ZHB] believes it is addressing all of these issues expressed by [Applicants], [the] Township, and the public in attaching the following conditions which the [ZHB] is of the opinion is in the public interest and welfare of all concerned.

ZHB Op. at 9.

Upon review, we conclude Applicants have not met their burden of showing the ZHB's imposition of conditions 1, 3, 4, 7, 17, 19, 25 and 27 constitutes an abuse of discretion.

Specifically, as to conditions 1, 3 and 4, which relate to the size of the kennel and the size of the interior pens for the dogs, the dimensions of these structures are consistent with Applicants' own testimony. R.R. at 56a–57a. Similarly, as for condition 19, which requires the dogs be fed by hand, Applicants offered testimony indicating they would hand feed the dogs daily. R.R. at 69a. Additionally, as to condition 25, which requires the dogs be exercised daily, Applicants offered testimony they

intended to provide daily exercise for the dogs. R.R. at 80a–81a. Not surprisingly, Applicants offer no convincing explanation as to how imposition of these conditions, which is based on testimony they provided, constitutes an abuse of discretion.

As to condition 7, which requires the entire interior be heated and air conditioned, the inside heat at the dog level shall be between 68 and 75, and natural ventilation for adequate air circulation, Applicants offer no argument as to how imposition of this condition constitutes an abuse of discretion. In fact, as part of their proposal, Applicants explained they would provide radiant heat and air conditioning, and the Township suggested they also provide proper ventilation. R.R. at 21a, 62a.

With regard to condition 17, requiring dog carcasses be disposed of off-site, the location and manner in which dog carcasses are disposed of is a matter of public health and welfare. Again, Applicants offer no argument as to how imposition of this condition constitutes an abuse of discretion.

As for condition 27, which requires the dogs be kept indoors between 9:00 p.m. and 7:00 a.m., this condition responds to the concerns of neighbors regarding noise generated by the kennel. *See* R.R. at 110a–112a. Further, we have held such time restrictions are reasonable. *See, e.g., Leckey* (upholding time restrictions on business' hours of operation due to concerns over noise); *Scalise v. Zoning Hearing Bd. of the Borough of W. Mifflin,* 756 A.2d 163 (Pa.Cmwlth.2000) (upholding conditions on variance authorizing storage use while restricting loading and unloading to 8:00 a.m. to 6:00 p.m.); *Hill v. Zoning Hearing Bd. of Maxatawny Twp.,* 142 Pa. Cmwlth. 539, 597 A.2d 1245 (1991) (affirming condition limiting business hours of

operation where supported by record evidence).

Based on the foregoing we affirm.

## *O R D E R*

AND NOW, this 9th day of January, 2009, the order of the Court of Common Pleas of Lebanon County is **AFFIRMED.**