# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Firearm Owners Against : 
Crime-Institute for Legislative and : 
Legal Educational Action, : 
Shot Tec, LLC and Grant Schmidt, : 
                        Appellants : 
                         : 
              v. : No. 765 C.D. 2024
                         : 
Lower Merion Township : Argued: December 11, 2024

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                  HONORABLE PATRICIA McCULLOUGH, Judge
                  HONORABLE MICHAEL WOJCIK, Judge
                  HONORABLE CHRISTINE FIZZANO CANNON, Judge
                  HONORABLE LORI A. DUMAS, Judge
                  HONORABLE STACY WALLACE, Judge
                  HONORABLE MATTHEW S. WOLF, Judge

OPINION BY JUDGE WOLF              FILED: October 9, 2025

        Firearm Owners Against Crime – Institute for Legislative and Legal Educational Action (FOAC), Shot Tec, LLC, and Grant Schmidt (Appellants) appeal from the May 28, 2024 decision of the Montgomery County Court of Common Pleas (trial court). The trial court granted in part and denied in part Appellants' motion to permanently enjoin enforcement of Lower Merion Township's (Township) Ordinance 4267. The ordinance amended the Township's zoning ordinance to limit businesses requiring a federal firearms license (FFL) to operating only by conditional use, in only four zoning districts, subject to 12 conditional use criteria. The trial court enjoined application of most of those criteria because they regulate firearms, not zoning, and are thus preempted by Section 6120 of the Pennsylvania

Uniform Firearms Act of 1995 (UFA), 18 Pa.C.S. § 6120.[1]  We conclude that the remaining criteria are also preempted because they are firearms regulations, not zoning regulations.  Accordingly, we affirm in part and reverse in part the trial court's order.

The facts are undisputed.  Appellant Schmidt is the sole member of Shot Tec, a Pennsylvania LLC.  Schmidt and Shot Tec are members of FOAC.  Shot Tec's principal business is the commercial sale, transfer, storage, and destruction of firearms.  It also sells simulated-fire training with firearms.

In May 2022, Shot Tec began operating its business at 246 Bala Avenue in the Township.  At that time, Shot Tec held a Type-07 FFL issued by the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) which permits the manufacture and/or sale of firearms and ammunition. It also held a Pennsylvania License to Sell Firearms issued by the Montgomery County Sheriff.

In February 2024, Shot Tec's landlord at 246 Bala Avenue terminated its lease effective May 31, 2024.  In March 2024, Shot Tec entered into a new lease for the property at 230 Rock Hill Road in the Township, contingent upon Shot Tec obtaining all necessary zoning permits to operate at that location. 230 Rock Hill Road is located in the zoning district identified as "RHR — Rock Hill Road District" (RHR District).   Under the Township's current zoning ordinance the RHR District

---

[1] Section 6120 of the UFA provides, in relevant part:

> **(a) General rule.**--No county, municipality or township may in any manner regulate the lawful ownership, possession, transfer or transportation of firearms, ammunition or ammunition components when carried or transported for purposes not prohibited by the laws of this Commonwealth.

18 Pa.C.S. § 6120.

permits FFLs by conditional use. To move to its newly leased location, Shot Tec was required to apply to the ATF for a new FFL specific to the new address.

In April 2023, about a year before Shot Tec's first lease was terminated, the Township enacted Ordinance 4267. It defines the term "Federal Firearms Licensee"[2] and restricts that use to four zoning districts by conditional use only, including the RHR District—where Shot Tec's new lease is located. O.R., Item No. 12, Ex. B. Section 5 of Ordinance 4267 amends the Township's zoning ordinance with the following legislative purpose and conditions for FFLs:

> A. Statement of legislative findings and intent. FFLs present unique zoning challenges for a multitude of reasons including but not limited to the dichotomy of firearms being both constitutionally and statutory [sic] protected while also being classified by Pennsylvania's penal code as dangerous weapons (e.g., 18 Pa.C.S. § 913). Firearms, ammunitions, and explosive devices, which are all the products or wares of FFLs, are also the target of thefts and straw purchases, and used as the instrumentality of crimes. Consequently, the business of manufacturing, selling or dealing, shipping, receiving, or importing firearms, ammunition, and/or destructive devices is always incompatible with the residential use of properties and surrounding residential areas, as well as pedestrian-oriented retail districts, as identified in the Township's Comprehensive Plan. This type of business, however, may be compatible with other zoning districts if certain standards are met which will harmonize this particular use with the uses permitted within those other districts. In creating these standards, the Board of Commissioners looked to (1) current federal and state regulations relating

---

[2] "A person of at least twenty-one (21) years of age or a legal entity, duly licensed by the [ATF], engaged in the business of manufacturing, selling or dealing, shipping, receiving, or importing federally regulated firearms, ammunition, or destructive devices." Original Record (O.R.), Item No. 12 (Stipulation), Ex. B

to firearms, ammunitions, and explosive devices; (2) industry-specific recommended best practices for FFLs, and (3) standards applied at the federal, state, and local levels, including but not limited to zoning regulations, to other uses, such as pharmaceutical-providers and banks, which are analogous to FFLs because they involve the transacting of other similarly challenging commodities.

. . . .

C.  Conditional use standards.

(1) No FFL shall be permitted to operate in or on the grounds of, or within 1,000 feet of the grounds of, a public, parochial or private school, unless the FFL can demonstrate compliance with 18 U.S.C. § 922(q), as amended.

(2) An FFL shall produce and keep on file with the Township a current copy of the applicable license or licenses issued by the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives, as well as any other required state, county, municipal, or administrative licenses or registrations including but not limited to any required by the Pennsylvania State Police.

(3) An FFL shall identify any fictious name under which the FFL will operate, the street and mailing address for the business, and the business's reasonable hours of operation.

(4) For any doors and windows which are directly accessible from any public space, such as a street, alley or sidewalk, or from any common area, such as a lobby or shared hallway, an FFL shall install and maintain smash-resistant doors and windows.

(5) An FFL shall install and maintain a general alarm system which provides glass protection, interior motion sensors, door and access panel contact monitoring, and a panic button.

(6) An FFL shall install and maintain an internal video surveillance system.

4

(7) An FFL shall provide and maintain an operational safety plan demonstrating compliance with all applicable laws and regulations prohibiting the sale of firearms, ammunition, or destructive devices to certain individuals including but limited [sic] to those restrictions contained in 18 U.S.C. § 922(b), as amended.

(8) An FFL shall provide and maintain an operational safety plan demonstrating compliance with all applicable laws and regulations prohibiting the selling, transferring, or otherwise disposing of a firearm without conducting a National Instant Criminal Background Check System (NICS) background check for every transfer of a firearm to a nonlicensee unless the transferee qualifies for one of the exceptions listed in 18 U.S.C. § 922(t), as amended.

(9) An FFL shall provide and maintain an operational safety plan - demonstrating compliance with all applicable laws and regulations prohibiting the selling, transferring, or otherwise disposing of a firearm to a person who not [sic] the actual buyer or transferee of the subject firearm; is otherwise prohibited by law from receiving or possessing firearms or ammunition; and/or is not a lawful resident of Pennsylvania.

(10) An FFL shall provide and maintain an operational safety plan to ensure that all required firearms transaction records required by federal and state law are completed for every transfer of a firearm to a non-licensee.

(11) An FFL shall provide and maintain an operational safety plan to ensure that each missing, lost, or stolen firearm from the FFL's inventory or collection is reported to the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives within 48 hours of discovery of the loss or theft.

(12) An FFL shall provide and maintain an operational safety plan to ensure compliance with all applicable laws and regulations related to record retention including but not limited to 27 C.F.R. § 478.129, as amended.

5

O.R., Item No. 12, Ex. B.

In July 2023, Appellants filed in the trial court a complaint for declaratory and injunctive relief and an application for preliminary injunction against enforcement of the ordinance. They argued that the ordinance is preempted by state firearms law and expressly disclaimed any constitutional challenge to the ordinance. After a May 7, 2024 hearing, the trial court issued a decision granting in part Appellants' request for permanent injunctive relief. The trial court enjoined enforcement of conditions 4 through 12 in Section 5(C) of the ordinance, as well as the portion of condition 3 relating to "the business's reasonable hours of operation." Trial Court Order, May 28, 2024, at 6. The trial court left the remaining conditions— i.e., conditions 1 and 2, and condition 3 insofar as it relates to fictitious names and addresses—and the ordinance's restriction to certain districts intact.

In an August 27, 2024 opinion pursuant to Pa.R.A.P. 1925(a), the trial court explained that there "is no precedential authority in this Commonwealth on the issue of whether [the UFA] preempts a county, municipality, or township from enacting a zoning ordinance that regulates the location of where an FFL may sell firearms." Trial Court Op. at 11. The trial court reviewed the law of preemption in non-firearm-related zoning cases, noting that we "distinguish between local ordinances that regulate *the method in which a particular activity is conducted (often preempted)*, from zoning ordinances *that constitute typical land use controls, i.e., location of uses (not preempted)*." *Id.* at 15 (quoting *Good v. Zoning Hearing Bd. of Heidelberg Twp.*, 967 A.2d 421, 429 (Pa. Cmwlth. 2009)) (emphasis in original). Turning to the firearms context, the trial court found persuasive our unreported decision in *The Gun Range, LLC v. City of Philadelphia* (Pa. Cmwlth., No. 1529 C.D. 2016, filed May 7, 2018), 2018 WL 2090303, *appeal denied*, 196 A.3d 20 (Pa.

6

2018).[3]  In *Gun Range*, we upheld a zoning ordinance limiting gun shops to one district by right and two others by special exception as not preempted by the UFA. Trial Court Op. at 16-17. The trial court found the location limits in the instant ordinance similar to those we upheld in *Gun Range* and concluded they are not preempted.  Regarding the three conditions it upheld, the trial court reasoned:

> Section 5.C.(1), which precludes an FFL from operating in or on the grounds of, or within 1,000 feet of the grounds or [sic], a public, parochial or private school, unless the FFL can demonstrate compliance with 18 U.S.C. § 922(q), as amended, is similar to the provision of the Ordinance that restricts FFLs to four (4) zoning districts because they both regulate location rather than the operations of FFLs. Section 5.C.(2) and the phrase "An FFL shall identify any fictitious name under which the FFL will operate, the street and mailing address for the business" set forth at Section 5.C.(3) are permissible in that these are general business requirements.

Trial Court Op. at 19.  Appellants appealed to this Court.[4]

On appeal,[5] Appellants argue that the trial court erred in enjoining only

---

[3] Unreported opinions of this Court filed after January 15, 2008, may be cited for their persuasive value.  Pa.R.A.P. 126(b); 210 Pa. Code § 69.414(a).

[4] The trial court issued its decision three days before Shot Tec's first lease ended.  In a declaration filed with this Court, Schmidt states Shot Tec moved to its new location but has not yet applied for or received an applicable FFL because doing so requires that it aver in its application to the ATF that the FFL use in not prohibited by state or local law.  Appellants understand this to mean that they must secure conditional use approval before applying for a new FFL, which is required because of the change in business location.  Schmidt declares that since the trial court's decision, Shot Tec has been operating its firearm training business without an FFL, thereby significantly decreasing its revenue because it cannot sell, transfer, store, or destroy firearms.

[5] "In reviewing a grant or denial of a permanent injunction, which will turn on whether the lower court properly found that the party seeking the injunction established a clear right to relief as a matter of law, our standard of review of a question of law is *de novo*, and our scope of review **(Footnote continued on next page…)**

7

part of the ordinance, and should have done so *in toto* because even conditions 1 through 3 are preempted by the UFA. Appellants focus first on express preemption under Section 6120 of the UFA, which prohibits municipalities from regulating "in any manner" the "transfer" of firearms. They claim that the ordinance clearly regulates the ownership and transfer of firearms, which is impermissible under the language of the UFA and our interpreting caselaw. More specifically, Appellants note that the trial court upheld the ordinance's location restrictions, limiting FFL businesses to four districts and allowing the Township to continue to impose conditions 1 through 3. Appellants argue these conditions—which restrict the location of firearms-related businesses and require them to produce documents, like licensure and contact or business name information—effectively regulate the business of transferring firearms, which is expressly preempted. In further support for express preemption, Appellants cite Section 2962(g) of the Home Rule Charter and Optional Plans Law,[6] which they argue preempts the ordinance because it obviously deals with the regulation of firearm transfer.

Appellants also invoke field preemption. They discuss the General Assembly's firearms-related enactments and related legislative history, noting statements by legislators which Appellants perceive as confirming that the General Assembly intends to entirely displace municipalities from regulating firearms. Appellants note this Court's statement that "the interpretative statements made in *Ortiz* [ *v. Commonwealth*, 681 A.2d 152 (Pa. 1996),] and [*Commonwealth v.*]

---

is plenary." *Eagleview Corp. Ctr. Ass'n v. Citadel Fed. Credit Union*, 243 A.3d 764, 770 n.1 (Pa. Cmwlth. 2020).

[6] "A municipality shall not enact any ordinance or take any other action dealing with the regulation of the transfer, ownership, transportation or possession of firearms." 53 Pa.C.S. § 2962(g).

8

*Hicks*[, 208 A.3d 916 (Pa. 2019)] . . . , on balance, indicate that the General Assembly clearly evidenced its intent to preempt and implicate the doctrine of field preemption." Appellants' Br. at 27 (quoting *Firearm Owners Against Crime v. City of Pittsburgh*, 276 A.3d 878, 893 (Pa. Cmwlth. 2022) (internal quotation marks omitted) (hereinafter *FOAC v. Pittsburgh*)).

Appellants argue they meet the permanent injunction standard[7] because the Township's enactment of the ordinance contrary to state law is a per se irreparable injury to Appellants, for which monetary damages will not compensate them. They add that the balancing of equities favors an injunction because the Township cannot claim harm if the ordinance is enjoined, since it is unlawful and the General Assembly has already weighed the equities in prohibiting municipalities from enacting such ordinances. They ask that we enjoin the ordinance *in toto* because there is no practical way to sever the conditional use aspects of it.

The Township appears to concede that the trial court properly enjoined conditions 4-12. It does not seek reversal in part or make arguments in the nature of a cross-appeal. In response to Appellants' arguments against the remaining three conditions, the Township concedes that Section 6120 of the UFA, as interpreted by our courts, expressly preempts local firearms regulation. But it distinguishes between ordinances which directly regulate firearms, which are preempted, and those that only incidentally relate to firearms, which are not. In support, the Township cites *Gun Range*, where we upheld the ordinance as a proper exercise of the zoning power, and *Gun Owners of America, Inc. v. City of Philadelphia*, 311

---

[7] To warrant a permanent injunction, a litigant "must establish that his right to relief is clear, that an injunction is necessary to avoid an injury that cannot be compensated by damages, and that greater injury will result from refusing rather than granting the relief requested." *Kuznik v. Westmoreland Cnty. Bd. of Comm'rs*, 902 A.2d 476, 489 (Pa. 2006).

A.3d 72 (Pa. Cmwlth. 2024) (en banc), *appeal granted*, 333 A.3d 1256 (Pa. 2025), where we upheld an ordinance regulating components that were not themselves firearms. The Township reads our holding in *Gun Owners of America* as narrowing the broader preclusion statement we made in *FOAC v. Pittsburgh*. The Township claims the ordinance at issue here simply zones FFL-dependent business into compatible zoning districts and imposes reasonable, non-burdensome conditional use criteria, which are traditional local land use controls not specific to firearms. It argues that other businesses—medical marijuana dispensaries, animal hospitals, and funeral homes—are subject to similar requirements. The Township asks us to uphold the trial court's decision permitting conditions 1 through 3 to remain applicable.

In reply, Appellants distinguish *Gun Range*, since the ordinance in that case permitted gun shops by right in one district, whereas the instant ordinance operates only by conditional use. Appellants ask that the Court overrule *Gun Owners of America* to the extent it is inconsistent with our broader field preemption statement in *FOAC v. Pittsburgh*. Appellants discuss our Supreme Court's recent decision in *Crawford v. Commonwealth*, 326 A.3d 850, 860 (Pa. 2024).[8] They note that although the question of field preemption was not before the Supreme Court in that case, the court's rationale strongly suggests field preemption.

"As a general matter, there are three types of preemption: (1) express preemption, where 'the state enactment contains language specifically prohibiting local authority over the subject matter;' (2) conflict preemption, which 'acts to preempt any local law that contradicts or contravenes state law;' and (3) field preemption, where 'the state regulatory scheme so completely occupies the field that

---

[8] *Crawford* was decided after Appellants filed their principal appellate brief in this case. Appellants discuss *Crawford* in their reply brief only.

10

it appears the General Assembly did not intend for supplementation by local regulations.'" *Crawford*, 326 A.3d at 861 n.12 (quoting *Berner v. Montour Twp. Zoning Hr'g. Bd.*, 217 A.3d 238, 247 & n.11 (Pa. 2019)). Because express preemption may not be absolute, we examine "the particular wording of th[e] provision" to determine the scope of the preemption. *Huntley & Huntley, Inc. v. Borough Council of Borough of Oakmont*, 964 A.2d 855, 863 (Pa. 2009).

We agree with Appellants that state law expressly preempts the ordinance. Per statute, municipalities may not "in any manner regulate the lawful ownership, possession, [or] transfer . . . of firearms," 18 Pa.C.S. § 6120, nor may they "enact any ordinance . . . dealing with the regulation of the transfer, ownership, transportation or possession of firearms," 53 Pa.C.S. § 2962(g). The Township's ordinance here is clearly intended to regulate the sale of firearms, rather than to regulate zoning. It is a gun regulation, not a zoning regulation. The trial court recognized as much when it found most of the conditional use criteria unlawful because they regulate "the method in which [the sale of firearms] is conducted." Trial Court Op. at 15

We decline to sever conditions 1 through 3 from the blatantly firearm-focused nature of the ordinance overall. Condition 1 prohibits FFL businesses within 1,000 feet of a school. That condition appears to be directly lifted from the Gun-Free School Zones Act of 1990, 18 U.S.C. § 922(q)(1)(A), a federal gun regulation. *See United States v. Lopez*, 514 U.S. 549, 551 (1995). Conditions 2 and 3 are focused solely on compliance with firearms regulation. Even the parts of those conditions that are stated in terms of neutral zoning regulation are part and parcel of the ordinance's intent overall, which is to regulate guns and gun transfers. They are

11

not separable from that clear intent.[9]  The Township asserts that other industries are subject to similar requirements for proof of licensure, but the extent and language of preemption in non-firearm industries is not before us.

Our decision in *Gun Range* is useful because it is readily distinguished. There, the ordinance limited the zoning districts in which gun shops could be located.  When challenged, the municipality claimed the ordinance was permissible as a zoning regulation applied to firearms-related businesses and was not preempted. We held that "*because* the [zoning ordinance] regulates the location of uses such as a 'gun shop,' and *does not restrict how the business is conducted* or whether it may be conducted within the [municipality], its zoning regulations as to the retail sales of firearms are not preempted by [the UFA]."  *Gun Range*, slip op. at 13.  Here, the ordinance does not merely locate FFL businesses.  It restricts how they may operate and conduct their business.  Thus, on the same rationale as in *Gun Range*, which we find persuasive, this ordinance is not a permissible zoning regulation, but a preempted gun regulation.

Accordingly, we hold that the remaining conditional use criteria are expressly preempted and thus unenforceable, and the trial court erred in denying Appellants' request to permanently enjoin the ordinance *in toto*.[10]  Given that no lawful conditional use criteria remain, it would not be reasonable going forward for the Township to require conditional use applications, charge conditional use fees, or

---

[9] Although Appellants rely on the nonseverability of the ordinance and dispute the import of the severability clause in Section 8 of the ordinance, *see* Appellants' Br. at 5-6, we do not base our decision on severability.   We conclude that regardless of whether the remaining provisions of the ordinance *could* be severed, we decline to sever them in our discretion based on their connection to the overall scheme of the ordinance.

[10] Given this disposition, which is dispositive, we need not consider Appellants' arguments regarding field preemption or their invitation to revisit our reported en banc decision in *Gun Owners of America*, which is now on appeal before the Pennsylvania Supreme Court.

otherwise engage in the conditional use process. Accordingly, rather than judicially rewrite the ordinance to allow FFL businesses in the four specified districts by right, rather than by conditional use, we will reverse the trial court's disposition, such that application of Ordinance 4267 will be enjoined in its entirety.

For the foregoing reasons, we affirm in part the trial court's order, to the extent that it enjoined Ordinance 4267 in part. We reverse the trial court's order to the extent that it declined to permanently enjoin the ordinance in its entirety.

_____
MATTHEW S. WOLF, Judge

13

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Firearm Owners Against :
Crime-Institute for Legislative and :
Legal Educational Action, :
Shot Tec, LLC and Grant Schmidt, :
     Appellants :
       :
   v.   : No. 765 C.D. 2024
       :
Lower Merion Township :

# **O R D E R**

AND NOW, this 9th day of October 2025, the May 28, 2024 decision of the Montgomery County Court of Common Pleas is AFFIRMED in part and REVERSED in part in accordance with the accompanying Opinion.

        _____

        MATTHEW S. WOLF, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Firearm Owners Against : 
Crime-Institute for Legislative :
and Legal Educational Action, :
Shot Tec, LLC and Grant Schmidt, :
:
                   Appellants :
:
           v. : No. 765 C.D. 2024
: Argued: December 11, 2024
Lower Merion Township :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                  HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE CHRISTINE FIZZANO CANNON, Judge
                  HONORABLE LORI A. DUMAS, Judge
                  HONORABLE STACY WALLACE, Judge
                  HONORABLE MATTHEW S. WOLF, Judge


DISSENTING OPINION BY
PRESIDENT JUDGE COHN JUBELIRER      FILED: October 9, 2025


By concluding that the entirety of Ordinance No. 4267 (Ordinance) of Lower Merion Township (Township)[1] is preempted by state law, the Majority strips the Township of its traditional power over land use and zoning. Because I would construe the Ordinance in a reasonable manner that preserves the validity of the Ordinance and gives effect to the Township's land use and zoning power, I respectfully dissent.

It is well settled that "a municipality cannot exercise powers in a manner that violates basic preemption principles," which dictate that if the General Assembly

---

[1] Lower Merion Twp., Montgomery Cnty., Pa., Ordinance No. 4267 (Apr. 19, 2023).

has expressly, by conflict, or by field preempted an area of law, municipalities are without power to regulate in that area.[2] *Crawford v. Commonwealth*, 326 A.2d 850, 858-61 & n.12 (Pa. 2024); *see also Devlin v. City of Philadelphia*, 862 A.2d 1234, 1242 (Pa. 2004). It is equally established, however, that Pennsylvania courts "traditionally give[] local zoning power great play" and are "reluctant to strike down a local ordinance in cases where a state statute does not directly and inherently conflict with the zoning power." *Council of Middletown Twp. v. Benham*, 523 A.2d 311, 315 (Pa. 1987); *see, e.g.*, *Hoffman Mining Co., Inc. v. Zoning Hearing Bd. of Adams Twp.*, 32 A.3d 587, 600 (Pa. 2011) (holding that the Supreme Court "will not infer that an express preemption clause encompasses the traditionally local concerns of land use and zoning when the General Assembly has not clearly incorporated those concerns into the clause"); *Good v. Zoning Hearing Bd. of Heidelberg Twp.*, 967 A.2d 421, 429 (Pa. Cmwlth. 2009) (upholding the validity of a zoning ordinance because the "[l]ocal regulation of the *location* (as opposed to the method) of dead animal disposal is not expressly prohibited by the preemption provision in the Domestic Animal Law[, 3 Pa.C.S. § 2352(a)]"). Accordingly, in the face of a preemption challenge, "[z]oning ordinances should be construed in a sensible manner to preserve their validity." *Council of Middletown Twp.*, 523 A.2d at 317.

---

[2] As recently explained by our Supreme Court,

> there are three types of preemption: (1) express preemption, where "the state enactment contains language specifically prohibiting local authority over the subject matter;" (2) conflict preemption, which "acts to preempt any local law that contradicts or contravenes state law;" and (3) field preemption, where "the state regulatory scheme so completely occupies the field that it appears the General Assembly did not intend for supplementation by local regulations."

*Crawford v. Commonwealth*, 326 A.2d 850, 861 n.12 (Pa. 2024)

RCJ - 2

The preemptive effects of two statutes are at issue here, which are nearly identical in language. Section 6120(a) of the Pennsylvania Uniform Firearms Act of 1995 (UFA) commands that "[n]o county, municipality or township may in any manner regulate the lawful ownership, possession, transfer or transportation of firearms, ammunition or ammunition components when carried or transported for purposes not prohibited by the laws of this Commonwealth." 18 Pa.C.S. § 6120(a). Similarly, Section 2962(g) of the Home Rule Charter and Optional Plans Law (Home Rule Law) directs that "[a] municipality shall not enact any ordinance or take any other action dealing with the regulation of the transfer, ownership, transportation or possession of firearms." 53 Pa.C.S. § 2962(g). Taken together, "[t]hese provisions, generally speaking, prohibit local governments from enacting or enforcing ordinances that regulate the ownership, transportation, possession, or transfer of firearms." *Crawford*, 326 A.3d at 856. However, these provisions do not prohibit local governments from enacting or enforcing an ordinance that "does not regulate firearms *per se*." *See Gun Owners of Am., Inc. v. City of Philadelphia*, 311 A.3d 72, 83-84 (Pa. Cmwlth. 2024), *petition for allowance of appeal granted*, (Pa., No. 9 EAP 2025, filed Feb. 18, 2025). Likewise, these provisions do not prohibit local governments from enacting or enforcing a zoning ordinance that regulates **the location of businesses** dealing in firearms. *See Gun Range, LLC v. City of Philadelphia* (Pa. Cmwlth., No. 1529 C.D. 2016, filed May 7, 2018), *petition for allowance of appeal denied*, (Pa., No. 245 EAL 2018, filed Oct. 23, 2018).[3]

Here, the Majority neither "give[s] local zoning power great play" nor construes the Ordinance "in a sensible manner to preserve [its] validity." *See*

---

[3] In accordance with Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), unreported panel decisions of this Court may be cited for their persuasive value.

*Council of Middletown Twp.*, 523 A.2d at 317. Instead, the Majority concludes the entirety of the Ordinance is preempted by Section 6120(a) of the UFA and Section 2962(g) of the Home Rule Law because the Ordinance "is a gun regulation, not a zoning regulation" as it "is clearly intended to regulate the sale of firearms, rather than to regulate zoning." *Firearm Owners Against Crime v. Lower Merion Township*, ___ A.3d ___, ___ (Pa. Cmwlth., No. 765 C.D. 2024, filed Oct. 9, 2025), slip op. at 11. The Majority does not, however, specifically explain how the provisions of the Ordinance at issue before this Court regulate firearms, but merely pronounces that these provisions "are part and parcel of the [O]rdinance's intent overall, which is to regulate guns and gun transfers." *Id.* Contrary to the Majority's conclusion, **none** of the provisions of the Ordinance at issue here regulate the ownership, transportation, possession, or transfer of firearms, ammunition, or ammunition components.

The Township enacted the Ordinance to amend its zoning ordinance[4] to harmonize the unique zoning challenges caused by businesses requiring a federal firearm license (FFL) with the Township's comprehensive zoning plan. *See* Ordinance § 5(A). Relevant here, the Township amended its zoning ordinance to only permit FFL businesses as a conditional use in four zoning districts and to require FFL businesses to meet the following conditional use standards:

> (1) No FFL shall be permitted to operate in or on the grounds of, or within 1,000 feet of the grounds of, a public, parochial or private school, unless the FFL can demonstrate compliance with 18 U.S.C. § 922(q), as amended.
>
> (2) An FFL shall produce and keep on file with the Township a current copy of the applicable license or licenses issued by the federal Bureau

---

[4] LOWER MERION TWP., MONTGOMERY CNTY., PA., ZONING ORDINANCE §§ 155-1.1–155-11.4 (2025).

of Alcohol, Tobacco, Firearms, and Explosives, as well as any other required state, county, municipal, or administrative licenses or registrations including but not limited to any required by the Pennsylvania State Police.

(3)  An FFL shall identify any fictious name under which the FFL will operate, the street and mailing address for the business . . . .

*Id.* §§ 2, 5(C)(1)-(3).[5]  Based on the plain language of the Ordinance, none of these provisions are preempted by Section 6120(a) of the UFA or Section 2692(g) of the Home Rule Law.

To start, Sections 2 and 5(C)(1) of the Ordinance are not preempted by Section 6120(a) of the UFA or Section 2692(g) of the Home Rule Law because the provisions regulate **the location of FFL businesses**.  Section 2 of the Ordinance only permits FFL businesses as a conditional use in four zoning districts.  Therefore, Section 2 of the Ordinance does not regulate firearms but is the quintessential land use and zoning regulation because it regulates **where a particular use is permitted** in the Township.  *See Arbor Res. LLC v. Nockamixon Township*, 973 A.2d 1036, 1046 (Pa. Cmwlth. 2009) ("Regulating whether a particular use is permitted in a particular location is the essence of zoning.").  Similarly, Section 5(C)(1) of the Ordinance is a classic zoning regulation because it regulates **the location** of FFL businesses in relation to school zones.  *See id.*  The Majority nonetheless concludes this condition is preempted because it "appears to be directly lifted from the Gun-Free School Zones Act of 1990, 18 U.S.C. § 922(q)(1)(A), a federal gun regulation."

_____

[5] As enacted, the Ordinance required 12 conditions for FFL businesses.  Upon the underlying challenge here from Firearm Owners Against Crime–Institute for Legislative and Legal Educational Action, Shot Tec, LLC, and Grant Schmidt, the Montgomery County Court of Common Pleas (trial court) permanently enjoined enforcement of conditions 4 through 12 and a portion of the third condition because Section 6120(a) of the UFA preempted these conditions.  The Township has not challenged the trial court's decision.  Therefore, the only conditions at issue before this Court are conditions one, two, and the portion remaining in three as identified above.

*Firearm Owners Against Crime*, ___ A.3d at ___, slip op. at 11. Even if true, Section 5(C)(1) of the Ordinance is not transformed into a regulation of firearms merely because it appears similar to a federal firearm statute; Section 5(C)(1) simply regulates the location of FFL businesses in relation to schools. Accordingly, Sections 2 and 5(C)(1) of the Ordinance are not preempted because the provisions are zoning regulations, not firearm regulations, as the provisions regulate the **location** of FFL **businesses**. *See Gun Range*, slip op. at 13 ("Because the [zoning ordinance] regulates the location of uses such as a 'gun shop,' and does not restrict how the business is conducted or whether it may be conducted within the [municipality], its zoning regulations as to the retail sales of firearms are not preempted by [Section 6120(a) of the UFA].").

Additionally, Sections 5(C)(2) and (3) of the Ordinance are not preempted by Section 6120(a) of the UFA or Section 2962(g) of the Home Rule Law because neither condition regulates firearms *per se*. Section 5(C)(2) requires FFL businesses to provide the Township with the applicable licenses required to operate as an FFL business. Relevantly, Section 5(C)(3) requires an FFL business to provide the Township with any fictitious name and the business's street and mailing address. Neither of these conditions regulate the ownership, transportation, possession, or transfer of firearms, ammunition, or ammunition components or restrict how FFL businesses may operate and conduct their business. Rather, the conditions merely request from FFL businesses information the businesses are already required to obtain or possess to operate and conduct their business. Simply, these conditions are not preempted because requiring FFL businesses to provide the requested information as a condition to operate as a conditional use in designated zoning districts does not regulate firearms *per se*. *See Gun Owners of Am.*, 311 A.3d at 83-

84 (upholding an ordinance that regulated the parts, machinery, and manufacturing process of firearms because it did not regulate firearms *per se*); *see also* LOWER MERION TWP., MONTGOMERY CNTY., PA., ZONING ORDINANCE § 155-10.6 (2025) (requiring medical marijuana grower/processor facilities to provide similar information as a condition to operate as a conditional use in the Township).

The Supreme Court has long directed that Pennsylvania courts should "give[] local zoning power great play" and "[z]oning ordinances should be construed in a sensible manner to preserve their validity." *Council of Middletown Twp.*, 523 A.2d at 315, 317. The Supreme Court and this Court have consistently adhered to these principles. *See, e.g.*, *Hoffman Mining*, 32 A.3d at 600; *Good*, 967 A.2d at 429; *Gun Range*, slip op. at 13. The Majority departs from this long-standing directive to conclude the entirety of the Ordinance is preempted despite that, under a reasonable construction of the Ordinance, the provisions at issue do **not** regulate firearms *per se*. In so doing, the Majority deprives the Township of its land use and zoning prerogative. Because I would construe the Ordinance in a manner that preserves its validity and the Township's traditional land use and zoning authority, I respectfully dissent.

_____
RENÉE COHN JUBELIRER, President Judge

Judge Dumas joins in the dissent.

RCJ - 7